## LAVENIA ULMER ET AL V. LULA BELL ULMER, INDIVIDUALLY AND AS ADMINISTRATRIX.

No. 7883. Decided May 13, 1942.
Rehearing overruled June 24, 1942.
(162 S. W., 2d Series, 944.)

*Kerr & Gayer,* of San Angelo, for plaintiffs in error.

A petition attempting to impose a constructive trust on a conveyance of property which alleges the payment of a stipulated amount and the delivery of other property and the assumption of a fixed amount of taxes in consideration of the conveyance should also state the value of the property, as the creation of a constructive trust requires an unjust enrichment. Olcott v. Gabert, 86 Texas 121, 23 S. W. 985; Tanberg v. Mullin, 90 S. W. (2d) 322; Thrower v. Brownlee, 12 S. W. (2d) 184.

*H. J. Hendrix,* of Houston, for defendants in error.

On the question of fraud, threats of suit and breach of trust. Faville v. Robinson, 111 Texas 48, 227 S. W. 938; Forrest v. Burns, 57 S. W. (2d) 1111.

MR. JUSTICE CRITZ delivered the opinion of the Court.

■ This case was tried in the District Court of Tom Green County, Texas, on the first amended original petition and first supplemental petition of the plaintiff and the first original answer of the defendants. Mrs. Lula Bell Ulmer, a widow, individually and as community executrix of the estate of her deceased husband, M. B. Ulmer, was the plaintiff. LaVenia Ulmer, surviving widow of J. A. Ulmer, deceased, James Arthur Ulmer, Jr., Marion Craddock Ulmer, and J. J. Perkins were the defendants. J. A. Ulmer, deceased, was the son of Mrs. Lula Bell Ulmer and her deceased husband, M. B. Ulmer. James Arthur Ulmer, Jr., and Marion Craddock Ulmer are the sons of LaVenia Ulmer and her deceased husband, J. A. Ulmer. Also, they are the grandsons of Mrs. Lula Bell Ulmer and her deceased husband, M. B. Ulmer. On final trial in the district court, that court sustained the general demurrer of the defendants to the plaintiff's petition. Plaintiff declined to amend, and a final judgment of dismissal was entered. On appeal to the Court of Civil at Austin by Mrs. Lula Bell Ulmer, the judgment of the district court was reversed and the cause remanded to that court for trial on its merits. 152 S. W. (2d) 383. The case is before this Court on writ of error granted on application of the defendants in the district court. The affect of the rulings of the Court of Civil Appeals is to hold that the petition of Mrs. Lula Bell Ulmer in the district court alleged a cause of action against the defendants in that court. The effect of the rulings of the district court is to the contrary. For the purposes

of deciding the questions of law here involved, we must accept all the allegations contained in the plaintiff's petition as true. Also, we must indulge every reasonable intendment in favor of such petition.

■ Before proceeding further we pause to say that this case was tried and appealed before September 1, 1941, the date on which the new "Texas Rules of Civil Procedure" became effective. Under such new rules the general demurrer is abolished. Rule 90, "Texas Rules of Civil Procedure." Under the rules and statutes in effect at the time this case was tried and appealed, the general demurrer was authorized. It follows, therefore, that if the trial court properly sustained the general demurrer at the time he acted thereon, the Court of Civil Appeals erred in reversing his judgment. Rule 814, "Texas Rules of Civil Procedure." In the rule just mentioned it is provided: "All things properly done under any previously existing rule or statutes prior to the taking effect of these rules shall be treated as valid."

The Court of Civil Appeals makes a statement of the facts and issues of this case which, as far as it goes, is accepted by all parties. It is as follows:

"That in 1931 plaintiff, individually and as community administratrix of the estate of herself and her deceased husband, M. B. Ulmer, owned a tract of land in the City of San Angelo, Texas, 50x90 feet, on which was located a brick building, occupied by a laundry, on which she owed three purchase money notes aggregating $3,562.50, owned by R. A. Hall; and one for $1,000 payable to J. T. Davis. That the operators of the laundry on the premises became unable to pay rent, and in 1931 turned the laundry over to plaintiff's son, J. A. Ulmer and his wife LaVenia Ulmer, one of the defendants herein, to operate. That in 1934, LaVenia Ulmer acquired title as her separate property to the laundry machinery in the building, and up to and after the death of J. A. Ulmer, in August, 1936, continued to operate the laundry.

"That in August, 1932, without knowing it was a deed, and under the representations of J. A. Ulmer, her son, in whom she reposed complete trust and confidence, that it was necessary for him and LaVenia to conduct their laundry business on said premises, she executed a deed, without reading it, conveying said property to her said son, along with other property, for

a recited consideration of $4,128.47 in cash, and the assumption by J. A. Ulmer of the payment of the Hall and Davis purchase money notes. That none of the recited cash consideration was paid, said deed was not intended as a conveyance of title, and it was orally agreed and promised by J. A. Ulmer that he and LaVenia were to pay the agreed rental of $100.00 per month each month on the Hall and Davis notes and to pay, as same accrued, all taxes on the property. That pursuant to such agreement and understanding J. A. Ulmer and LaVenia Ulmer did, between April, 1931, and October, 1936, make payments aggregating $2,127.00. But that after LaVenia acquired title to the laundry machinery in 1934, which was encumbered with a purchase money lien for $9,600.00, she fraudulently, designedly, and by exertion of undue influence over J. A. Ulmer, in his weakened condition,, induce him to divert rent payments from the Hall and Davis notes and apply same to the payment of the $9,600.00 debt against the machinery; to neglect to pay taxes; and to mislead and deceive his mother, plaintiff, and lull her into a sense of security by fraudulent representations and assurances that he was carrying out the trust agreement made with her, keeping the taxes paid up, and discharging as agreed the Hall and Davis notes.

"That prior to the death of J. A. Ulmer, LaVenia had induced her brother-in-law, J. J. Perkins, to take over $3,000.00 of the $9,600.00 debt against the laundry machinery, and had paid off the remainder, in violation of the trust agreement, with funds to the extent of $6,200.00, due plaintiff as rents and which should have been paid on her Hall and Davis notes. That all of such breaches of trust, and frauds upon plaintiff were committed at the instance of LaVenia Ulmer, were not discovered, and could not in the exercise of reasonable diligence have been discovered, by the plaintiff until December, 1936, because of the full confidence and trust she reposed in her son. That when plaintiff did undertake, after the death of her son, to ascertain the facts, LaVenia Ulmer, at the instance, with the connivance, and on the advice of J. J. Perkins, destroyed all papers, documents, and evidence relating to the various transactions, and refused to give plaintiff any information concerning same.

"That after the death of J. A. Ulmer, LaVenia continued to occupy the premises, without payment of any rent, and to conduct a laundry business thereon for a period of 14 months. That as soon as plaintiff learned the facts, she filed in the office of the County Clerk of Tom Green County her notice of

statutory lien for past due rents up to December 31, 1936, less credits allowed, aggregating $5,473.

"That LaVenia Ulmer, in furtherance of fraudulent acts theretofore perpetrated, conspired with J. J. Perkins and induced him to purchase the Hall and Davis notes, and a note for $675.00 executed by J. A. Ulmer and plaintiff to a San Angelo bank and secured by a mortgage on said property, given by J. A. Ulmer without the knowledge of plaintiff; to take advantage of plaintiff's aged, enfeebled, and penurious condition, and used same as weapons under threats of foreclosure, to compel appellant through such fraud and duress to release her landlord's lien for past due rents, and to convey to him said property in satisfaction of the notes he had acquired against it. Her deed, wherein she was joined by all the heirs of her deceased husband, to J. J. Perkins was attached to her petition as an exhibit, and recites, in addition to the cancellation of all of said notes, the payment to plaintiff of $3,000.00 cash and the assumption by Perkins of all taxes due, amounting to approximately $1,500.00."

■ The petition of Mrs. Lula Bell Ulmer in the district court is very long and complicated. Including exhibits attached thereto and made a part thereof, it comprises some 58 pages of the transcript. This petition contains a count in which an ordinary suit in trespass to try title to the west 50 feet of Lot 6 and the west 50 feet of the south 40 feet of Lot 5, in Block 86, of the Dallas Subdivision of Niles' Addition No. 2 to the City of San Angelo, Tom Green County, Texas, known as San Angelo Heights Addition, according to the map thereof in the county clerk's office and the deed records, is pleaded. However, in addition to such count in trespass to try title, the petition pleads specifically and in detail the facts on which Mrs. Lula Bell Ulmer contends her title depends. Simply stated, in addition to an ordinary pleading in trespass to try title, Mrs. Lula Bell Ulmer specifically pleads her asserted title. Such a petition must be tested as to its sufficiency by the title specifically pleaded. Snyder v. Hunn, 66 Texas 255, 18 S. W. 340; McDonald v. Red River County Bank, 74 Texas 539, 12 S. W. 235. An examination of the petition shows that it alleges that Mrs. Lula Bell Ulmer executed and delivered two deeds to the above property, as follows:

1. A deed dated August 12, 1932, executed by Mrs. Lula Bell Ulmer, individually and as administratrix of the com-

munity estate of herself and deceased husband, M. B. Ulmer, to J. A. Ulmer. This instrument is set out in full in the petition. It is in form a general warranty deed. It recites a cash consideration of $4,128.17, paid to Mrs. Ulmer, and a contractual consideration, by the terms of which J. A. Ulmer agreed to assume and pay off, first a note in the principal sum of $1,000.00, given by grantor to J. T. Davis, and second, three notes, each in the principal sum of $1,187.50, given by grantor to R. A. Hall.

2. A deed dated September 13, 1937, executed by Mrs. Lula Bell Ulmer in the same capacities as the deed first above described, to J. J. Perkins. This deed is also signed by numerous other parties, who constitute all the surviving heirs at law of M. B. Ulmer, deceased, and J. A. Ulmer, deceased. This instrument is also in form a general warranty deed. It recites a cash consideration, paid by J. J. Perkins to Mrs. Lula Bell Ulmer, of $3,000.00. The petition recites that this $3,000.00 was in fact paid. The deed further recites the following additional considerations:

(a) The cancellation and delivery of three certain notes, each in the principal sum of $1,187.50, aggregating the sum of $3,562.50. These are the notes assumed by J. A. Ulmer in the deed first above described. It appears from the petition that, though J. A. Ulmer had assumed such notes, he had failed to pay same, and they had been purchased by and transferred to J. J. Perkins.

(b) J. J. Perkins, grantee, assumed the contractual obligation to pay all state, county, city, and school taxes, delinquent and current, on the property conveyed to him and above described, amounting to approximately $1,500.00.

(c) J. J. Perkins cancelled a promissory note in the principal sum of $675.00, together with accrued interest. It is recited that this note was dated May 1, 1936; that it was signed by Mrs. Lula Bell Ulmer and J. A. Ulmer; that it was payable to San Angelo National Bank; and that it was secured by a mortgage on certain property conveyed by the deed. It is alleged that this note had been purchased by J. J. Perkins from the above-named bank.

(d) The deed recites that the grantors cancelled any and all claims whatever to the Blue Bonnet Laundry, machinery, etc.

If we understand Mrs. Lula Bell Ulmer's petition in the district court, it seeks to impress a trust of some kind in her favor on the property above described. In order to impress such trust, the petitioner alleged a long and complicated course of dealing, and oral contracts and agreements, between Mrs. Lula Bell Ulmer on the one side and J. A. Ulmer and his surviving wife, LaVenia Ulmer, on the other. The petition also alleges numerous acts of fraud on the part of J. A. and LaVenia Ulmer. We shall not attempt to detail such alleged acts. It is sufficient to say that the petition contends that the result of such dealings and alleged fraudulent acts was to constitute Mrs. Lula Bell Ulmer the real owner in some way of the above-described property.

It appears on the face of the plaintiff's petition that, after the death of J. A. Ulmer, she joined in the deed which conveyed all the property here involved to J. J. Perkins. This deed was made after she had full knowledge of the fact that J. A. Ulmer and LaVenia Ulmer had not carried out their alleged oral agreements with her, and after she had full knowledge of all the alleged acts of fraud committed against her by J. A. and LaVenia Ulmer. It is therefore evident that plaintiff can have no relief in this action unless she has alleged a cause of action against J. J. Perkins. He now has title to the property here involved by virtue of a deed of conveyance from the plaintiff, which deed was also joined in by LaVenia Ulmer and by all the heirs at law of both J. A. Ulmer, the deceased husband of LaVenia Ulmer, and M. B. Ulmer, the deceased husband of plaintiff. Plaintiff received a cash consideration of $3,000.00 for this conveyance, which money was paid to her by J. J. Perkins.

■ When we come to consider that part of plaintiff's petition which attempts to allege a cause of action against J. J. Perkins, we find that it alleges that after the death of J. A. Ulmer, LaVenia Ulmer conspired with J. J. Perkins and induced him to purchase the Hall, Davis, and San Angelo National Bank notes, all of which constituted liens on the property here involved. The petition then alleges that plaintiff's deed to J. J. Perkins was induced by fraud and duress perpetrated and exerted by J. J. Perkins on plaintiff. The only fraud or duress alleged is that Perkins purchased the notes and liens above mentioned without the knowledge of plaintiff, and with intent and purpose on his part of taking advantage of plaintiff, who was aged and feeble and in a penurious condition, by using

such notes and liens as weapons with which to compel plaintiff to make a conveyance of this property to him. It is then alleged that plaintiff was compelled to convey this property to Perkins because she was unable to protect herself, and Perkins was threatening her with foreclosure of his liens. We are unable to see how any alleged act of Perkins could be classed as either fraud or duress. All the notes here involved were in the hands of parties who had done the plaintiff no wrong. Such notes were secured by valid liens on this property. The holders of such notes and liens had a perfect right to sell, and Perkins had an equal right to purchase. The notes were past due. Perkins therefore had a perfect right to demand payment, and to threaten foreclosure if his demand was not complied with. A threat to sue on a past due note and to foreclose the lien securing same is neither fraud nor duress. Thrower v. Brownlee (Com. App.), 12 S. W. (2d) 184; Tanberg v. Mullins (Civ. App.), 90 S. W. (2d) 322. Simply stated, it is neither fraud nor duress to purchase a note and lien against property owned by one who is unable to pay same. Furthermore, it is neither fraud nor duress for the purchaser of such note and lien to threaten to foreclose in order to induct a conveyance of the mortgaged property to him. 17 Amer. Jur. 892, par. 17; Robinson v. Lee (Com. App.), 249 S. W. 217; Brewing Co. v. Harlan (Com. App.), 228 S. W. 1090; Ward v. Scarbrough (Com. App.), 236 S. W. 437; Trigg v. Shelton (Com. App.), 249 S. W. 209. "It is never duress to threaten to do that which a party has a legal right to do, * * *." 17 Amer. Jur., supra.

The judgment of the Court of Civil Appeals is reversed, and the judgment of the district court is affirmed.

Opinion delivered May 13, 1942.

Rehearing overruled June 24, 1942.