**MacDONALD et al. v. FOLLETT et al.**

No. 11551.

Court of Civil Appeals of Texas. Galveston.

Oct. 14, 1943.

Rehearings Denied Nov. 23, 1943.

672

W. J. Howard and Merrill & Scott, all of Houston (Sam R. Merrill, of Houston, of counsel), for appellants.

Floyd Enlow, John C. Henderson, and Cleveland Davis, all of Angleton, for appellees.

MONTEITH, Chief Justice.

This action in trespass to try title was brought by appellees, Lewis H. Follett and Mrs. Lottie B. Follett, against appellants, R. D. MacDonald, his wife and others, and certain Oil Companies, to recover overriding royalties on 570 acres of land, a part of the M. B. Nuchols League in Brazoria County, Texas.

In addition to a statutory trespass to try title action, appellees pled in detail the grounds upon which they based their claim for the recovery of a 1/64 overriding royalty in the land in controversy, and an additional undivided 1/2 of 1/64 overriding royalty on said land which had been conveyed to appellant R. D. MacDonald by certain oil companies.

Appellants answered by defensive pleas and by a denial under oath of an alleged joint adventure agreement between Follett and MacDonald to divide said overriding royalties. They specially pled the statute of frauds against said alleged agreement; that there was no consideration to support it; that it was against public policy, void, and unenforceable, and that it had been rescinded by the parties. They also pled specially the four-year statute of limitation, laches, stale demand, and estoppel.

The case was tried before the court with a jury. At the conclusion of the evidence the plaintiffs and both groups of defendants filed their separate motions for an instructed verdict. The court granted the motion of the Harrison-Abercrombie group, and the motion of appellants as to the additional 1/2 interest in a 1/64 undivided royalty, but overruled the motion of appellants as to the 1/2 interest in the 1/32 overriding royalties, and as to that interest granted the motion of appellees and instructed a verdict in their favor. Verdict was rendered and judgment entered in accordance with such instructions.

The record shows that by instrument dated April 23, 1934, appellant R. D. MacDonald, through his secretary, J. L. Poutra, acquired from F. W. Mueller and his associates, the oil, gas, and mineral leases on the 570 acres in controversy, consisting of two tracts of 240 and 330 acres, respectively. The leases in question were ordinary commercial leases, with a primary term of three years. No development was had under these original leases and they expired on April 23, 1937. Said leases had been assigned by appellant, R. D. MacDonald, to the Harrison-Abercrombie oil interests during the year 1934. Prior to said assignment, R. D. MacDonald had caused J. L. Poutra, in whose name the leases had been taken, to assign to Lewis H. Follett a 1/32 overriding royalty under said leases, with the understanding that Follett would assign the 1/2 of the 1/32 interest, so assigned, to him, MacDonald. The 1/64 overriding royalty retained by Follett was conveyed to him as attorney's fees or compensation for his legal services to the owners of the land. The title to said 1/64 undivided royalty interest remained in Follett until the expiration of said leases on April 23, 1937. On April 2, 1937, R. D. MacDonald acquired through J. L. Poutra new or top leases on the 570 acres of land in controversy for a three-year period, at an increased bonus and increased yearly rentals. Shortly after these 1937 leases were acquired, appellee Follett asserted a claim to a 1/64 overriding royalty under them and demanded a conveyance of this interest from MacDonald. MacDonald refused to assign this interest to Follett. On or about April 12, 1937, these leases were assigned by Poutra to Harrison-Abercrombie. Poutra retained a 1/32 overriding royalty in the leases, which he later transferred to MacDonald. After the execution of said 1937 leases, no development having been done under them, MacDonald on or about October 10, 1938, purchased from the Mueller interests new or top leases on said lands to begin on April 2, 1940, at the expiration of the 1937 leases. These leases were assigned by MacDonald to Harrison-Abercrombie on June 2, 1939, MacDonald reserving to himself a 1/32 non-participating overriding royalty. The first oil produced from said land was produced under these last mentioned leases.

The 1934 leases were made by J. L. Poutra as lessee on April 23, 1934. They expired, by their own terms, in the absence of production or drilling operations, on April 23, 1937. The 1937 leases were dated April 2, 1937. They were made to J. L. Poutra as lessee and also expired by their own terms on April 2, 1940, in the absence of production or drilling operations.

The 1938 leases were made to R. D. MacDonald, lessee. They were dated October

10, 1938, and their primary term was for a period of two years from April 2, 1940. The overriding royalty interests involved in this suit are based upon and grow out of the 1938 leases upon which production was had.

The consideration paid to the lessors for the 1934 leases was $1,710. The leases provided for a yearly payment during the primary term of $1.50 per acre in lieu of development. These payments were made by the Oil Companies.

The consideration paid to the lessor for the 1937 leases was $2,280. The cash consideration for each of these leases was paid by the check of R. D. MacDonald.

The first drilling operations were shown to have been begun on May 30, 1941, after the 1937 leases had expired by their own terms.

Appellees contend that R. D. MacDonald and Lewis H. Follett were tenants in common in the ownership of the royalty interest involved herein, in that each owned a 1/64 royalty interest carved out of the 7/8 working interest in the 1934 leases, under such circumstances that each occupied such a fiduciary relationship to the other that, as a matter of law, the action of appellant MacDonald in taking additional mineral leases on the same property and retaining therein a 1/32 overriding royalty in himself, inured to the benefit of appellee Follett and constituted appellant, R. D. MacDonald, a trustee of an undivided 1/2 interest in the royalty retained by MacDonald.

■ It is now well settled that overriding royalties similar to those held by MacDonald and Follett under said 1934 leases were real property and that they, as royalty owners thereunder, were joint owners or joint tenants in the land in question. Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472, and cases therein cited.

■ While there is a general rule in this state that the purchase by a joint tenant of an outstanding title in the common property inures to the benefit of his cotenant, it is the settled law that this rule does not forbid one joint tenant or cotenant from acquiring his cotenant's share in the common property where it is shown that the sale was not the result of collusion and that the property brought a fair price. This exception to the general rule is based on the fact that a cotenant is under no legal or moral obligations to protect the other owners of the common property in their enjoyment thereof. Vaughn v. Kiesling, Tex.Civ.App., 150 S.W.2d 435; 11 Tex. Jur. 470.

■ It is also held that the general rule, above referred to, has no application where the claimants are asserting hostile claims against each other to the common property, in which case either party may buy the real title for himself (Niday v. Cochran, 42 Tex.Civ. 292, 93 S.W. 1027; 62 Corpus Juris, 461), and that, in order for the general rule to apply, there must be a relation of mutual trust and confidence between the parties. The whole doctrine is one of equity predicated upon trust and where the facts do not create a trust nothing forbids one cotenant from acquiring an outstanding title or equity individually. The rule, however, presumes the utmost fairness in the transaction. Brougham et al. v. Thompson, Tex.Civ.App., 145 S.W. 2d 1115; Bennet v. North Colorado Springs L. & Improvement Co., 23 Colo. 470, 48 P. 812, 58 Am.St.Rep. 281; 11 Tex. Jur. 440, par. 25.

■ Appellants contend that any rights or equities which Follett might have acquired by virtue of a fiduciary relationship in the ownership of the earlier leases cannot now be availed of by him by reason of his alleged acts and conduct in attempting to obstruct and hinder MacDonald in his effort to procure the 1937 leases, and that by reason of such actions and conduct MacDonald owed him no duty with respect to the subsequently procured leases.

There is evidence in the record to support a finding that appellee Follett did in fact attempt to obstruct and hinder MacDonald in his efforts to procure the 1937 leases, and that the relationship of trust and confidence between them had ceased to exist. These questions should, we think, have been submitted to the jury, under the above authorities, for the purpose of determining whether MacDonald was released from any claim by Follett to royalties acquired by MacDonald under subsequently acquired leases.

■ Appellees also base their asserted rights to recover the royalty interests in question on the alleged existence of a relationship of joint adventure, or special partnership, between Lewis H. Follett and R. D. MacDonald at the time the 1934 leases were acquired, and that, by reason thereof, one-half of the overriding royalties acquired by MacDonald under the 1937 and

1938 leases vested in Follett. Appellants denied the alleged joint adventure agreement under oath and on the trial introduced evidence tending to establish that such agreement, if any, related to leases acquired by them long prior to the transactions involved herein, and that such agreement, if one had existed, had terminated long prior to the acquisition of the leases involved herein.

Under this record, the existence of said partnership agreement and the question as to whether it had terminated prior to the date of the acquisition of the leases involved herein were, we think, questions of fact which should have been determined by the jury.

■ Appellants also contend that, if appellees ever had any rights or equities in the royalties involved in this suit, their cause of action to enforce them arose more than four years prior to the filing of this suit and that such claims or rights, if any, were barred by the four-year statute of limitation.

Appellees contend that, since their cause of action is a suit to recover the title to real estate, the statute of limitation based on adverse possession would apply. This contention cannot be sustained.

The question presented under this contention is whether, when MacDonald purchased the 1937 leases and assigned them to the Harrison-Abercrombie interest, reserving an overriding royalty in himself, his acts vested in Follett a title to the mineral interest reserved in said leases or merely an interest therein. In the event Follett became vested with the title to such interest, the statute of limitation based on adverse possession would apply. In the event he merely acquired an interest in said royalties and not the title to said royalty interests, we think that the four-year statute would be applicable.

Appellees alleged that "it being the understanding between Mr. MacDonald and I that whatever overrides we would receive we would divide." Under this allegation Follett's alleged right was, we think, to require MacDonald to assign to him a ½ interest in the royalty which MacDonald had reserved when he assigned the leases in question to Harrison-Abercrombie. This would, we think, constitute an agreement for the joint acquisition of overriding mineral royalties, which are interests in land and not the title thereto. The agreement would only imply that if either of the parties should thereafter acquire overriding royalties under such agreement he would later convey the contractual interest to the other.

■ It is, we think, the settled law in this State that a contract for the joint acquisition of lands in which it is contemplated that one party shall acquire the title to property and that he will then convey an interest therein to the other, and that upon failure or refusal on the part of the party who has promised to make such conveyance, the action of the complaining party is for specific performance and his action is barred by limitation within four years after the cause of action shall have accrued. Article 5531, R.S.1925.

■ While appellees' pleadings consist first of a statutory trespass to try title petition, this pleading was supplemented by pleadings in which they set out in detail the grounds on which they claim an interest in the overriding royalty in controversy.

It is well settled that by specially pleading their claim of title appellees abandoned their general allegations and are limited in their right of recovery to the matters set out in their special pleading. Ulmer v. Ulmer, 139 Tex. 326, 162 S.W.2d 944; 44 Tex.Jur. 562.

This suit was filed April 30, 1942. On or about April 12, 1937, MacDonald, acting through Poutra, assigned the 1937 leases to Harrison-Abercrombie, reserving an overriding royalty in himself.

■ The question to be determined then is, when limitation began to run against Follett's alleged claim. Appellants contend, and there is evidence in the record to support such contention, that Follett was apprised of the fact that said leases had been renewed and that MacDonald had taken an overriding royalty in himself as soon as the renewal leases were executed, and that he had refused Follett's demand for an assignment of such royalty interest to him at that time. Appellees contend, however, that in April, 1937, after MacDonald had secured a renewal of said leases, he had informed Follett that he would see him later, but that Follett had not been able thereafter to secure an assignment of an interest in said leases from him. They contend that limitation did not begin to run against this claim until Follett knew, or by the use of due diligence should have known, that his claim had been re-

pudiated. Appellees also contend that the running of the statute of limitation was suspended for a portion of the claimed limitation period due to MacDonald's absence from the State of Texas.

In the event limitation did not begin to run immediately after Follett made his demand for an assignment to him of the royalty under the 1937 leases, limitation would have begun to run against Follett's alleged claim within a reasonable time after he knew, or by the use of due diligence should have known, of MacDonald's repudiation of his claim.

Under the record before us, there is evidence to support findings favorable to appellants' defense of the four-year statute of limitation. There is also evidence in the record that the running of the statute of limitation was suspended for a portion of the claimed limitation period due to MacDonald's absence from the State. Both of these matters should have been submitted to the jury by the trial court. Allison v. Harrison, 137 Tex. 582, 156 S.W.2d 137; Faville v. Robinson, 111 Tex. 48, 227 S.W. 938; Martin v. Martin, Tex.Civ.App., 130 S.W.2d 863; Johnson v. Peckham, 132 Tex. 148, 120 S.W.2d 786, 120 A.L.R. 720.

No appeal was prosecuted by appellees and no error was assigned in this court to that portion of the judgment of the trial court denying plaintiffs a recovery against any of the defendants for the title and possession of one-half of that certain 1/64 overriding royalty on oil and gas described in paragraph 2(b) of plaintiffs' first amended original petition, which 1/64 overriding royalty is described in said judgment as being set out in the overriding conveyance from Harrison Oil Company et al., to R. D. MacDonald, dated January 29, 1937, and recorded in Vol. 286, pages 283-289, Brazoria County Deed Records. That portion of the judgment of the trial court denying plaintiffs any recovery against any of the defendants as to said one-half of said 1/64 overriding royalty will be affirmed.

In like manner no appeal was prosecuted by appellees and no error was assigned to that portion of the judgment denying them a recovery against Harrison Oil Company, J. S. Abercrombie Company, Atlatl Royalty Corporation, and Coronado Exploration Corporation as to the 1/64 overriding royalty which plaintiffs recovered in the trial court against R. D. MacDonald et al., but limiting them to their recovery against Harrison Oil Company, J. S. Aber-

crombie Company, Atlatl Royalty Corporation and Coronado Exploration Corporation to the impounded royalties, and the judgment of the trial court as to that portion of the judgment will be affirmed.

In all other respects the judgment of the trial court will be reversed and the cause remanded.

It follows that the judgment of the trial court should be affirmed in part and reversed and remanded in part, as indicated by this opinion.

Affirmed in part; reversed and remanded in part.

CODY, Justice (concurring).

The majority opinion has made a ruling of considerable importance to the oil business with which I find it impossible to agree. It rules that if the owner of an overriding royalty acquires a top lease, that such top lease inures to the benefit of the other overriding royalty owners pro tanto, unless they have estopped themselves from claiming such benefit. The basis for this holding is the view that the reversionary interest (out of which the top lease is carved) is a hostile outstanding title, and that the owners of overriding royalties are cotenants.

An oil lease is the grant by the lessor of a determinable fee in the minerals to the lessee. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27. If production is not ultimately had under a lease, the determinable fee granted will lapse, and the full title to the minerals will revert to the lessor, and the lessor will then be the fee simple owner of the minerals, and when this happens he can grant the minerals as he pleases. The fact that a person may have owned an overriding royalty, along with others, under an expired lease, will not incapacitate him from acquiring a full title to a mineral interest which he may purchase from the owner to whom the full title to the minerals has reverted. Since this is undeniably true, why may not the owner of an overriding royalty acquire from the owner of the title to the reversion to the minerals full title to a top lease, which is carved out of such reversion? There is no hostility between the estate of a determinable fee in minerals, and the estate in the reversion. By definition there cannot be a determinable fee without there also being a reversionary interest. The owner of the determinable fee, or of an interest in it, is as free to buy the reversion,

or an interest in it, as though they were different pieces of land. There can be no possession had under the reversionary estate unless and until the determinable estate has been suffered to terminate. In legal contemplation it can make no difference whether the owner of an overriding royalty acquires a top lease, or waits until the expiration of the lease under which he owned his overriding royalty and acquires a lease. In other words, even if it be conceded that owners of overriding royalties are cotenants of interests carved out of the determinable fee, they are not cotenants as to any interest in the reversion, and there is no conflict between the title to an estate in a determinable fee and the title to an estate in the reversion.

I think the following cases sufficiently support my dissent: Montgomery v. Phillips Petroleum Co., Tex.Civ.App., 49 S.W. 2d 967, error refused; Harrison v. Barngrover, Tex.Civ.App., 72 S.W.2d 971, error refused; Gordon v. Empire Gas & Fuel Co., 5 Cir., 63 F.2d 487.

I do not disagree from the view that there was a jury question presented on the issue of a joint venture, and concur in the remand of the cause for a new trial.

### On Motion for Rehearing.

MONTEITH, Chief Justice.

In their motion for rehearing appellees complain of this court's finding of fact in its original opinion that: "The ⅟₆₄ overriding royalties retained by Follett were conveyed to him as attorney's fees or compensation for his legal services to the owners of the land."

It was the court's understanding that the quoted finding of fact was undisputed from numerous statements to that effect made by the appellants in their brief which appellees failed to challenge in their brief. The finding was made under Rule 419 of Texas Rules of Civil Procedure, which provides that any statement made by appellant in his original brief as to the facts or the record may be accepted by the court as correct unless challenged by opposing party.

A re-examination of the record discloses, however, that while appellants contended that said ⅟₆₄ royalty was conveyed to Follett as compensation for his legal services rendered in procuring said leases and there is evidence in the record to support this contention, Follett testified that "he had received the override" in question "by reason of my work with MacDonald" and that "it was just my share of the profits in the work we were doing." In view of this testimony and the fact that the question as to whether an agreement for the sharing of profits existed between Follett and MacDonald is an ultimate issue of fact in the case we think that it should have been submitted to the jury, as stated in our original opinion. For this reason the quoted finding of fact is withdrawn from our original opinion.

Appellees' request that we make additional findings of fact, including a finding that appellee Follett did not attempt to obstruct and hinder MacDonald in his efforts to procure the "1937 leases," is overruled. As stated in our original opinion, there is evidence in the record to support appellants' contentions in this regard and this question should, we think, have been submitted to the jury.

The other findings of fact requested by appellees are, in our opinion, evidentiary in their nature and not confined to ultimate issues in the case and are not such as are contemplated under Rule 455, Texas Rules of Civil Procedure.

We were in error in stating in our original opinion that appellees had, in their pleadings, alleged that "It being the understanding between Mr. MacDonald and I that whatever override we should receive we would divide it." An examination of the record discloses that the quotation in question was not a part of appellee's pleadings, but was part of his testimony in reply to a question as to their agreement for a division of whatever royalties they might receive in connection with and growing out of their alleged joint adventure.

The above corrections in no way affect the final determination of this cause as embodied in our former opinion. Motions for rehearing by both appellants and appellees are refused.

Motions refused.