**Grace GREENE, Appellant,**

**v.**

**Garth C. BATES et al., Appellees.**

**No. 15041.**

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Jan. 11, 1968.

Rehearing Denied Feb. 1, 1968.

Ellis F. Morris, Houston, for appellant.

Otto A. Yelton, Jr., Houston, for appellees.

COLEMAN, Justice.

This is a suit to recover money allegedly paid under duress. The cause was submitted to a jury, but the trial court rendered a judgment for the defendant notwithstanding the verdict.

By reason of certain business transactions appellant, Grace Greene, became acquainted with Mrs. Betty Parker, an employee of Home Title Company. They became friendly and periodically had coffee together. Mrs. Parker told appellant that the president of the Lockwood National Bank loaned a contractor payroll money and that a mortgage company loaned him construction money; that this money was deposited with the Home Title Company and that she was trustee of the fund and disbursed the money as it became due to the contractor. Mrs. Parker said that the banker cashing the payroll check made a $100.00 brokerage fee and that she, Mrs. Parker, made $100.00.

In June, 1962, Mrs. Parker called appellant and told her the banker was out of town and asked her if she would like to make the brokerage fee by cashing the check. She told appellant that there would probably be several opportunities for her to cash such checks. Appellant agreed that she would like to make the fee and Mrs. Parker issued a check in the sum of $1,523.14 payable to the Wells Insurance

Agency, the trade name under which appellant conducted an insurance agency. This check was dated June 8, 1962 and was signed by Mrs. Parker and another employee of the title company. It bore this notation:

Lien Due
Floyd Stewart
James Stewart
16/9 Ralston Addition

Appellant took the check to the bank, cashed it, and delivered the proceeds to Mrs. Parker, less the $100.00 "brokerage," and took her receipt for the money. On the same day appellant opened a bank account in the name "Wells Investment Company" and deposited $100.00 in the account.

On June 28, 1962 Mrs. Parker delivered to appellant a check on the Home Title Company account in the amount of $2500.00 payable to Wells Investment Company. It bore this notation:

Refund
Barnett Magids
15/A Holman 10 Acres

Appellant deposited this check in her account and issued a check on her account in the sum of $2400.00 payable to Betty Parker. Each of these checks, in due time, was cashed by the bank.

In May, 1963, appellant called Home Title Company for some information and talked to Bert Cadell, an attorney connected with the Company. When he learned her name, he told appellant that they had been looking for her and wanted to talk to her about a check from Betty Parker to Wells Investment Company. He told her that Betty Parker stole the money and that he would have the bonding company get in touch with her. She later called Mr. Cadell back and asked him to explain, but he told her: "* * * I would just forget about it. We will talk to you."

Appellant testified:

"So I hung up the second time and I was more concerned about it and I made a third call. I insisted on knowing what he was talking about because being in the insurance business and being alone, you can't be too careful of your reputation, and the insurance company's and so forth. He was still evasive with me. I was petrified. I even cried because I was so upset because he wouldn't tell me anything."

The next morning appellant called Mr. Garth Bates, who was the president of Home Title Company. She testified with regard to this conversation as follows:

"Mr. Bates got on the phone and he was polite in the beginning. He politely informed me that he was sorry that I got myself into this mess, but ignorance is no excuse for the law and there is only one thing he wants and that is his money, and I could either pay him back the money or deal with the bonding company, and if I deal with the bonding company the bonding company will then file charges with the District Attorney's office, and Betty Parker would be involved in a felony matter and I would be involved, I would take my chance."

On cross-examination appellant testified:

Q The gist of the conversation that you are talking about, the threat that you are complaining of here, is that Mr. Bates said he was going to turn it over to the bonding company, and the bonding company might file charges against Betty Parker and you would become involved?

A He didn't say that they might file charges. He told me I could either pay him back or deal with the bonding company and the bonding company was turning Betty Parker over to the District Attorney's office and she would be involved in a felony matter and I would be involved too."

There was testimony that Mr. Bates knew at the time of his conversation with appellant that Betty Parker had used this

same pattern of operation in getting others to cash checks for her. Mr. Bates testified that he knew that Mrs. Parker had illegally taken the money and that Mrs. Greene got $200.00 of it.

The evidence shows that appellant had several days to reflect on this matter; that she discussed the matter with her family; that she secured the services of a lawyer who was present during at least two of the conversations with Mr. Bates and advised her not to pay the money to the Home Title Company. Despite the advice of her lawyer she paid the Title Company $4,023.14, and secured a full release of all its claims against her growing out of the cashing of the two checks.

Only one issue was submitted to the jury. It follows:

"Do you find from a preponderance of the evidence that the acts and words of defendant Garth Bates with respect to the repayment of the $4,023.14 to Home Title Company by the Plaintiff constituted duress?

"Answer 'We do' or 'We do not'.

*Duress* is defined as any action, either mental, physical or otherwise, which causes another person to act contrary to his own free will or submit to a situation or condition against his own volition or interest. It is the exercise by one party of sufficient influence over another to destroy the free agency of the other."
" * * * "

"ANSWER TO SPECIAL ISSUE NO. 1 _____ We do _____."

■ Since judgment was rendered non obstante veredicto, only that evidence which supports the jury's verdict can be considered, and if there is any evidence of probative value which, with inferences that may be properly drawn therefrom, will reasonably support the verdict of the jury, the verdict cannot be disregarded. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (1958); Shelton v. Belknap, 155 Tex. 37,

282 S.W.2d 682 (1955); Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194 (1952).

■ On the other hand if the trial court should have granted appellees' motion for instructed verdict, the trial court properly entered judgment non obstante veredicto. Brooks v. Taylor, 359 S.W.2d 539 (Tex.Civ. App., Amarillo 1962), ref., n. r. e.

■ It is well settled that where one voluntarily pays money to another on a claim of right, with full knowledge of all the facts, in the absence of fraud, duress, or compulsion, the money cannot be recovered back merely because the party at the time of payment was ignorant of or mistook the law as to his liability. Pennell v. United Ins. Co., Inc., 150 Tex. 541, 243 S.W.2d 572 (1951).

The subject of duress is treated in The Restatement of The Law of Contracts, Ch. 16, § 492, et seq. Duress is defined as "any wrongful threat of one person by words or other conduct that induces another to enter into a transaction under the influence of such fear as precludes him from exercising free will and judgment, if the threat was intended or should reasonably have been expected to operate as an inducement."

Comment f. under Section 492 states: "Not only must fear be produced in order to constitute duress of the second type but the fear must be a cause inducing entrance into a transaction, and though not necessarily the sole cause, it must be one without which the transaction would not have occurred."

Comment g. reads:

"Acts or threats cannot constitute duress unless they are wrongful, even though they exert such pressure as to preclude the exercise of free judgment. But acts may be wrongful within the meaning of this rule though they are not criminal or tortious or in violation of a contractual duty. Just as acts contracted for may be against public policy and the contract vitiated for that reason, though

the law imposes no penalty for doing them, so acts that involve abuse of legal remedies or that are wrongful in a moral sense, if made use of as a means of causing fear vitiate a transaction induced by that fear, though they may not in themselves be legal wrongs."

Section 943 of the Restatement states that duress may be exercised by threats of wrongful imprisonment, and, in comments c. and d. explains the meaning of "threats of wrongful imprisonment" as used in the section as follows:

"c. Duress by imprisonment for crime and threats of such imprisonment stand on a different footing from imprisonment on civil process or threats thereof. If a person accused of crime is not guilty, or if his imprisonment is for any reason illegal, clearly a transaction brought about by fear due to imprisonment or threat of it is made under duress. But even if the accused is guilty and the process valid, so that as against the State the imprisonment is lawful, it is a wrongful means of inducing the accused to enter into a transaction. To overcome the will of another for the prosecutor's advantage is an abuse of the criminal law, which is made for another purpose. Such imprisonment, therefore, may amount to duress and threat of arrest on a criminal charge may similarly be duress.

"d. A threat of criminal prosecution is not in terms a threat of imprisonment, but in effect it ordinarily is a threat of imprisonment and also, irrespective of whether the prosecution is likely to be followed by imprisonment, it is a threat of bringing disgrace upon the accused. Threats of this sort may be of such compelling force that acts done under their influence are coerced, and the better foundation there is for the prosecution, the greater is the coercion."

This statement of the law is supported by respectable authority in Texas. In Gray v. Freeman, 37 Tex.Civ.App. 556, 84 S.W. 1105 (1905), opinion by Justice Fly, the court said:

"Again it has been held that mere threats of a criminal prosecution do not constitute duress unless there is a threat of immediate and unlawful imprisonment. This doctrine has been also modified, and it is held that the guilt or innocence of the wronged party, or the lawfulness or unlawfulness of the threats, are immaterial."

In the same opinion the court quotes from an opinion of the Supreme Court of Alabama in the case of Hartford Fire Ins. Co. v. Kirkpatrick, 111 Ala. 456, 20 So. 651, as follows:

"'It was never contemplated in the law that either the actual or threatened use or misuse of criminal process, legal or illegal, should be resorted to for the purpose of compelling the payment of a mere debt, although it may be justly owing and due, or to coerce the making of contracts or agreements from which advantage is to be derived by the party employing such threats. Ample civil remedies are afforded in the law to enforce the payment of debts and the performance of contracts, but the criminal law and the machinery for its enforcement have a wholly different purpose, and cannot be employed to interfere with that wise and just policy of the law that all contracts and agreements shall be founded upon the exercise of the free will of the parties, which is the real essence of all contracts.'"

The court concluded that duress is the deprivation by one person of the will power of another by putting such other in fear for the purpose of obtaining by that means some valuable advantage of him. It also approved as the law of this State a statement that the means by which that condition of mind is produced, and whether such condition was in fact produced, were questions of fact for the jury.

Substantially the same statement of the law was made by Fly, Chief Justice, in his opinion for the court in the case of Sabinal State Bank v. Ebell, 294 S.W. 226 (Tex.Civ. App., San Antonio 1927). This case was followed in Pfeuffer v. Haas, 55 S.W.2d 111 (Tex.Civ.App., Austin 1932), where attention was also directed to Houston Ice & Brewing Co. v. Harlan, 228 S.W. 1090 (Tex.Com.App., 1921, judgment adopted). These cases cite Landa v. Obert, 78 Tex. 33, 14 S.W. 297 (1890), and in the Harlan case the court states that Landa v. Obert is often cited as committing the Supreme Court of Texas to the proposition that if one has been wronged as the result of a violation of the criminal law, it is not duress to threaten him with criminal prosecution. The court in Harlan found it unnecessary to determine whether this interpretation of the Landa case was correct, but cast doubt on the validity of that interpretation. It stated, however, that duress may be predicated upon a threat of lawful imprisonment where the purpose of the threat is to exact a consideration wholly disconnected from the offense for which prosecution is threatened; where the purpose and effect of the threat is to exact an unconscionable bargain; and where the purpose and effect of the threat is to obtain a payment or other pecuniary advantage from a near relative of the party threatened.

In the Harlan case the plaintiff's husband was short in his accounts with his employer, who informed him that the shortage must be settled at once. Mr. Harlan told Autrey, the employer's representative, that the only thing he could offer was his homestead. Autrey inquired whether Harlan's wife would sign the deed and Harlan stated that he thought she would. Autrey did not talk to Mrs. Harlan. He did not mention to Mr. Harlan the fidelity bond or say anything about probable or possible prosecution. Harlan told his wife that he was short in his accounts and that unless the homestead was conveyed to cover the shortage, the matter would be turned over to the bonding company and he would be prose-cuted. After thoroughly discussing the matter, Mrs. Harlan told her husband that she would sign the deed if he was short in his accounts. He told her he knew he was short. A few days later she executed the deed, but went with him to deliver it "to find out for sure he was really short in his account." She was shown the audit and the deed was delivered. The value at which the property was taken was less than the shortage.

The court held that giving full force to all of the testimony favorable to plaintiff, and indulging every favorable presumption which the evidence will justify, it cannot be said that Autrey, either directly or indirectly, threatened to make use of any criminal process himself or to be in any way instrumental in causing it to be used in regard to plaintiff's husband.

Appellee stresses this portion of the opinion:

"Harlan had no means of making up the shortage, and was given several months in which to do so, but failed. The inevitable consequence of his continued failure to settle was for the brewing company to call upon the surety company to make good the loss. That was a right given by law to the brewing company; and, construing the evidence as warranting the conclusion that a threat, either express or implied, was made to resort to that security, certainly it cannot be said that such threat could in any sense constitute duress."

Appellee cites cases involving the doctrine of duress of property, or business compulsion, holding that it is never duress to threaten to do that which a party has a legal right to do, and as a general proposition this is a correct statement of the law. Ulmer v. Ulmer, 139 Tex. 326, 162 S.W.2d 944 (1942); Dale v. Simon, 267 S.W. 467 (Tex.Com.App.1924, judgment adopted). These cases, however, are not applicable to a fact situation raising duress by reason of a threat of wrongful imprisonment, as that term is used in the Restatement.

In Landa v. Obert, supra, the Supreme Court held:

"Upon another trial of this cause, if the evidence shall show that Landa had employed lawyers to bring a civil suit against Obert for an amount of money which he claimed had been embezzled by him, and that Landa and his attorneys, or both, informed him of the charge against him, and of their purpose to institute such civil suit, *and also informed him, or by any means gave him to understand,* that he was charged with being guilty of the crime of embezzlement, and either threatened to cause him to be prosecuted for that offense *or made known to him that one result of filing such civil suit would be to so direct the attention of others to the matter as to lead to a criminal prosecution, and his imprisonment on the charge,* and that Obert was not in fact guilty of the charge, and was not indebted to Landa, and that he was through such representations or proceedings induced to fear that if he did not accede to the demands then being made upon him, he would incur the danger of imprisonment, and if under the influence of the fears so created, and otherwise unwillingly, he surrendered the money and notes now in controversy to Landa or his attorneys, he will be entitled to a judgment in his favor * * *" (emphasis added).

■ In this case the jury might have believed that Mr. Bates made the statement to Mrs. Greene previously quoted, although this was a disputed issue of fact. A reasonable person might have concluded that this conversation constituted a covert threat that felony charges would be filed against Mrs. Greene, as well as Betty Parker, unless Mrs. Greene paid the money demanded. Considering the testimony in the light most favorable to Mrs. Greene, and drawing all reasonable inferences from it, and discarding all adverse testimony, we conclude that there is testimony which would require the submission of the issues necessary to establish the cause of action based on duress.

■ Since an instructed verdict for the defendant would not have been proper, the motion for judgment non obstante veredicto should not have been granted. Hicks v. Matthews, 153 Tex. 177, 266 S.W.2d 846 (1954); Robertson v. Rig-A-Lite Company, 394 S.W.2d 838 (Tex.Civ.App., Houston 1965, n. w. h.).

By cross-point appellee assigned error to the action of the trial court in overruling his objection to the definition of "duress" submitted in the court's charge. This point must be sustained.

The issue as submitted did not require a finding that there be a threat to prosecute Mrs. Greene. While the definition may be correct in the abstract, it is not correct as applied to the facts of this case in that the element of unlawful threat is omitted. There would be no duress if Mr. Bates' testimony was believed. He testified that she came to his office with her lawyer, and they discussed the matter. He stated to her that he would not "attempt to tell her what her liabilities were, and she could ask her own lawyer." He testified: "Now, I am handling this as all other claims. I must present my claim to the bonding company before I can be paid. * * * I didn't ask her to pay it. I didn't demand that she pay it." He stated that he did not have any discussion with her about her being in trouble.

■ Issues of fact were raised as to whether or not there was a threat, express or implied, made by Mr. Bates to prosecute, or secure the prosecution of, Mrs. Greene for a felony offense; and whether or not the threat so overcame the will of Mrs. Greene as to cause her to pay the money to Home Title Company; and whether, in the absence of such threat, she would have paid the money voluntarily. Here the jury did not find facts from which the trial court could determine the existence of duress as a matter of law. The case, in effect, was submitted on a general charge. In such a case the definition must call to the attention of the jury the necessary elements of

duress. The objection made pointed out with sufficient clarity wherein the definition was in error. The error was properly preserved. Yellow Cab & Baggage Co. v. Green, 154 Tex. 330, 277 S.W.2d 92 (1955).

The judgment of the Trial Court is reversed and the cause is remanded to the Trial Court.

PEDEN, J., not participating.