**K. G. McDONALD, Appellant,**

v.

**REPUBLIC NATIONAL BANK OF DALLAS et al., Appellees.**

No. 16735.

Court of Civil Appeals of Texas.

Dallas.

June 10, 1966.

Rehearing Denied July 8, 1966.

Andress, Woodgate, Richards & Condos, Dallas, for appellant.

Lane, Savage, Counts & Winn, L. M. Lesh, Locke, Purnell, Boren, Laney & Neely, Robert S. Mizell, Fred Lohmeyer, Golden, Croley, Howell, Johnson & Mizell, Dallas, for appellees.

CLAUDE WILLIAMS, Justice.

K. G. McDonald brought this action against Republic National Bank of Dallas (hereinafter called Bank) and M. B. Chastain alleging multiple theories of recovery of money damages, both actual and exemplary. Primarily, McDonald alleged that Chastain was the record owner of certain mineral interests in and to described tracts of land located in Panola County, Texas but that one-half of each such record interest was held in trust by Chastain for the benefit of McDonald. He further alleged that on January 24, 1957 Chastain borrowed $150,000 from the Bank and delivered to it a deed of trust purporting to cover the entire interest in the various lands. He charged that the Bank either had actual knowledge, or with the exercise of ordinary care could have ascertained knowledge, that he, McDonald, was an owner of one-half interest in and to said lands and mineral interests thereunder, but notwithstanding such knowledge, or availability of such knowledge, the Bank took a lien upon the entire interest, to the detriment of McDonald. Plaintiff also alleged that the Bank permitted Chastain to continue operation of the properties and that such was done in such a manner to misappropriate certain proceeds of production, all to the detriment of McDonald and for which he sought an accounting. As a separate basis of his action

against the Bank McDonald claimed that he secured a commitment from the Bank in 1962 to lend him certain sums of money to acquire producing oil properties in the State of Kansas but such Bank later refused to honor the commitment, to his loss and damage.

McDonald specifically pleaded that on December 3, 1962 he executed and delivered to the Bank a certain agreement in writing which the Bank was contending to constitute an accord and satisfaction of any claim or interest of McDonald existing prior thereto. McDonald sought to avoid the legal effect of this instrument by contending that same had been secured from him under duress and fraud so that the same was not effective. He also contended that the terms and provisions of the alleged accord and satisfaction had not been carried out by the Bank so that the same was not legally effective to bar McDonald's prior claims.

McDonald prayed for damages, actual, exemplary and compensatory, in the sum of $4,862,248.50.

Chastain answered McDonald's suit by pleading limitations and also pleading in bar of McDonald's cause of action the accord and satisfaction of December 3, 1962 as well as a subsequent conveyance from McDonald to Chastain of December 7, 1962 which expressly conveyed to Chastain the proceeds of all oil and gas production from the properties in question. Chastain alleged that McDonald had actual knowledge of the loan from the Bank to Chastain in January 1957 and had acquiesced in said loan and received a portion of the benefits thereof so that McDonald was estopped to assail said transaction.

The Bank, in answer to McDonald's suit, pleaded a release and satisfaction of all claims existing between McDonald and the Bank by virtue of the December 3, 1962 written agreement, contending that said agreement had been fully performed. It also pleaded that McDonald had knowledge of the 1957 loan and had participated in the fruits and benefits of said loan which resulted in estoppel. It alleged that at the time the loan was made to Chastain, and a deed of trust taken on the properties in question, it had no knowledge of any claimed interest by McDonald nor any limitations on the power of Chastain to convey or transfer the title to such interest.

Both defendants filed a motion for summary judgment with supporting affidavits and depositions. These motions were resisted by McDonald. The trial court sustained the motions for summary judgment of both the Bank and Chastain and rendered judgment that McDonald take nothing by his cause of action against them. The judgment provided, however, that the same was without prejudice to the rights of McDonald against the Bank for an accounting of the monies, if any, due or which may become due to McDonald by the Bank under the terms and provisions of the letter agreement dated December 3, 1962.

From the above judgment appellant McDonald brings this appeal in which, in six points of error, he asserts the existence of at least five issues of fact to support his contention that summary judgment, pursuant to Rule 166-A, Vernon's Texas Rules of Civil Procedure, is not proper and should be reversed. His points are (1) that "there are genuine disputed issues as to material facts"; (2) that the Bank had notice of McDonald's undivided interest in the oil and gas leases in issue when it accepted the mortgage from Chastain in 1957; (3) that the Bank refused to honor its commitment to make a loan with reference to the Kansas properties; (4) that the agreement of December 3, 1962 was obtained from him by duress; (5) that since the Bank did not pay the agreed consideration recited in the December 3, 1962 letter agreement, same did not constitute an accord and satisfaction; and (6) that he was entitled to an accounting.

■ Appellant immediately concedes that his first point is too general to justify our consideration. It is therefore overruled.

Before proceeding to consider the remaining points advanced by appellant we agree with his contention that this being summary judgment proceedings the reviewing court considers the record in the most favorable light against the moving parties, in this instance the appellees, and that all presumptions and reasonable inferences must be indulged in favor of appellant. The burden to conclusively negative the existence of any genuine issue of fact is upon appellees and if there are any doubts existing concerning the propriety of such motions same must be resolved against them. Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., S.Ct., 391 S.W.2d 41, 47. We also approach the problem with sympathetic agreement with the statement of our Supreme Court by stating the real purpose of Rule 166–A, T.R.C.P., in Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (quoting from Kaufman v. Blackman, Tex.Civ. App., 239 S.W.2d 422, 428):

" 'The underlying purpose of Rule 166–A was elimination of patently unmeritorious claims or untenable defenses; not being intended to deprive litigants of their right to a full hearing on the merits of any real issue of fact.' "

Our review of this record convinces us that appellees have sustained their burden of demonstrating the nonexistence of issuable facts as well as the absence of a meritorious claim by McDonald and therefore the action of the trial court in sustaining the motions for summary judgment was correct.

■ Appellant's contention, as contained in his point two, that whether the Bank had notice, actual or constructive of his interest in the security when it accepted the deed of trust from Chastain in 1957 is a question of fact which should be resolved by a jury, is lacking in merit for several reasons.

First, the record is entirely devoid of any evidence that the Bank, or any of its officials, knew or had access to knowledge that McDonald claimed any interest in the properties involved in the deed of trust given to the Bank by Chastain in 1957. The record reveals that Chastain represented to the Bank that he owned the interest of record in his name and that title opinions, relied upon by the Bank, demonstrated that Chastain was the owner of the interest which he mortgaged to the Bank.

Second, the record reveals that Chastain had express or implied authority from McDonald to execute the deed of trust in 1957, covering all of the interests standing of record in his name. It was without dispute in the record that McDonald knew that Chastain held record title to the properties and that McDonald acquiesced in Chastain's actions in entering into agreements with drilling contractors for the drilling of the wells on the properties in question and in entering into gas sales contracts with gas purchasers. The only testimony concerning trust relationship between McDonald and Chastain was with reference to letters between the two and McDonald's testimony to the effect that Chastain held his interest in trust *but there were no terms to the trust.* In this connection he testified:

"Q. He signed those gas sales contracts and product sales contracts covering your interest?

"A. Yes.

"Q. You say that Mr. Chastain held your interest in his name as trustee?

"A. Yes, sir.

"Q. What were the terms of that trust?

"A. There was no terms. He merely held it in his name."

■ Third, the record is undisputed that McDonald received a portion of the pro-

ceeds from the loan which was secured by the deed of trust of January 1957. Numerous exhibits in the record reveal accountings between McDonald and Chastain which included portions of the loan, together with interest thereon, as well as demonstrating that McDonald took deductions on his income tax returns for interest paid to the Bank on such loan. By virtue of having accepted the benefits of the loan McDonald is estopped to deny that the Bank acquired a valid lien on his claimed interest in the properties. Macedonia Baptist Church v. Farm & Home Savings & Loan Ass'n, Civ. App., 110 S.W.2d 1013; Itasca Roller Mill & Elevator Co. v. Wooten, Civ.App., 246 S.W. 678.

Finally, on February 14, 1961, some four years after the execution of the deed of trust lien, McDonald specifically recognized the lien when he, represented by counsel, received assignments of interest from Chastain, each of same providing:

"Subject to, but not burdened with, payments of balance of deed of trust lien, dated January 25, 1957, recorded in Volume 57, Page 456, Deed of Trust Records, Panola County, Texas."

▮ Appellant's point three relates to a rather collateral matter involving an alleged agreement by the Bank to finance McDonald in some oil holdings in the State of Kansas. McDonald attempts to persuade us that there is evidence to the effect that an official of the Bank committed that institution to make him a loan of $1,600,000 for the purpose of purchasing oil holdings in Kansas or, failing that, to say that the Bank agreed to refinance McDonald's note which he had given to the Pioneer Bank & Trust Company in Shreveport, Louisiana and which was secured by a deed of trust on his interest in the Panola County properties. We have carefully read McDonald's testimony in the light most favorable to him but fail to find sufficient probative evidence contained therein to create an issue of fact

that a binding contract was entered into between McDonald and the Bank. It would be impractical to attempt to reproduce either all or a substantial portion of the testimony as set forth in McDonald's deposition but, taken at their face value, and with all proper implications indulged in favor of McDonald, the necessary elements of a binding contract are not shown to exist. McDonald does not attempt to testify as to when such loan was to be made, the rate of interest thereon, the time of payment, or the method of securing the payment, or any other essential facts to constitute a contract.

As to an agreement by the Bank to refinance the Pioneer Bank note such commitment, if it was made, was later satisfied by the written agreement of December 3, 1962 between McDonald and the Bank which will be discussed in connection with a subsequent point. Accordingly, we overrule appellant's third point of error.

By appellant's fourth and fifth points of error it is contended that the agreement of December 3, 1962, relied upon by the Bank and Chastain as an accord and satisfaction of claims which McDonald previously had, was executed by McDonald under duress and furthermore, since the Bank did not pay the agreed consideration named in such agreement, such instrument was not effective as a complete accord and satisfaction between the parties. An explanatory statement is required to properly consider these points.

On or about November 27, 1962 McDonald wrote the Bank the following letter:

"November 27, 1962

"Mr. John Scott, Executive Vice
 President
Republic National Bank of Dallas
Dallas, Texas

"Dear Sir:

"As you are aware, I am the owner of a one-fourth oil and gas leasehold inter-

est in the following units situated in Panola County, Texas:

"(1) M. B. Chastain-Robinson Unit No. 1

"(2) M. B. Chastain-Carrie Williamson Unit No. 1

"(3) M. B. Chastain-Rosa Jones Unit No. 2

"(4) M. B. Chastain-A. J. Reed Unit No. 1

"(5) M. B. Chastain-Rosa Jones Unit No. 1

"M. B. Chastain of Shreveport, Louisiana, purported to include my interest in the above units in a deed of trust dated January 25, 1957, executed by him to T. J. Moroney, Trustee for Republic National Bank of Dallas, as security for the payment of a promissory note in the principal sum of $150,000.00, which deed of trust is recorded in Vol. 57, page 456 of the Deed of Trust Records of Panola County, Texas. At the time this deed of trust was executed, you had notice of my interest in these units and acquired no lien upon any of my interest by the execution of such deed of trust.

"For some time now, I have attempted unsuccessfully to obtain a release from you of all of your claim to my interest in these units. However, you have failed to execute the same and I have turned the matter over to Mr. Angus G. Wynne, Sr., attorney of Dallas, and requested him to institute litigation immediately against the Republic National Bank of Dallas.

"The lawsuit being filed by Mr. Wynne, in addition to seeking a judgment decreeing that the Republic National Bank of Dallas has no lien upon my interest in these units, will also ask for the recovery of damages sustained by me as the result of losing a sale of my interest. Also, in view of your claim, Champlin Refining Company and Texas Gas Transmission Company continue to hold my runs in suspense and I have been deprived of the use of my money. Because of this, my business and credit have suffered and I will seek to recover damages from you to compensate me for my loss.

"Very truly yours,
"/s/ K. G. McDonald
"K. C. McDONALD

"cc: M. B. Chastain
Petroleum Tower
Shreveport, Louisiana

Pioneer Bank & Trust Company
Shreveport, Louisiana
Attn: Mr. Rubert Campbell"

Prior thereto, and on July 2, 1962, McDonald had executed to Pioneer Bank & Trust Company of Shreveport, Louisiana his promissory note in the amount of $26,000 and had delivered to such bank a deed of trust securing the payment of such note, said lien covering his interest in the properties situated in Panola County, Texas.

On December 3, 1962, a letter was executed by McDonald addressed to the Bank, and accepted by the Bank, as follows:

"December 3, 1962

"Republic National Bank of Dallas
Dallas, Texas

"Attention: Mr. John R. Scott
Executive Vice President

"Gentlemen:

"The Pioneer Bank & Trust Company of Shreveport, Louisiana, holds my promissory note in the original principal amount of $26,000, dated on or about July 2, 1962. I have taken the position that this note is secured by the properties described in a deed of trust executed by me to a Trustee for the Pioneer Bank & Trust Company, dated July 2, 1962, covering properties situated in Panola County, Texas. These properties are interests in the properties described in a deed of trust executed by M. B. Chastain to T. J. Moroney, Trustee, dated January 25, 1957, recorded in Volume 57, page 455 of the Deed of Trust Records of Panola County, Texas. My $26,000

note to the Pioneer Bank & Trust Company, referred to above is past due and that Bank has published notices to foreclose their deed of trust of July 2, 1962.

"I represent and warrant that I have no defenses, legal or equitable, to the payment of the promissory note of Pioneer Bank & Trust Company, referred to above, and that the balance thereof as of this date, including applicable attorneys' fees and expenses of posting, is $27,066.26. I further represent and warrant that I have made no conveyances, recorded or unrecorded, legal or equitable, of the interests described in the aforementioned deed of trust to Pioneer Bank & Trust Company and purported to be covered thereby.

"At my request you are purchasing the above-described $26,000 promissory note from Pioneer Bank & Trust Company for a consideration of $27,066.26; and, in consideration of your purchasing such note and preventing the foreclosure sale, I agree that upon demand by you, I will:

"(1) Renew the note purchased by you for a period of 60 days; and

"(2) Will convey such interest as I own in the properties described in the aforementioned deed of trust to such person or party as you may designate within said 60-day period for a cash consideration equal to the then unpaid balance of the promissory note referred to above, or any renewal or extension thereof. Such conveyance shall carry with it all rights to suspended and accrued runs and to contractual interests relating thereto, subject to accrued operating expenses and ad valorem taxes, whether or not now in litigation subject to the following reservation:

"There are presently pending two lawsuits relating to these properties. In one, Champlin Oil & Refining Company is the defendant, and the principal issue is the construction of a gas and/or products sales contract with that company.

In the other suit, Fred Whitaker of Carthage, Texas, is claiming a disputed participation in two of the units described in the aforementioned deed of trust. Certain runs are presently in suspense because of this Fred Whitaker litigation. Upon the sale referred to above, I will retain the right to receive the first $30,000 which may be recovered from the Champlin lawsuit or which may be released from the suspension caused by the Whitaker lawsuit attributable to the interest which I claim to own and which is described in the aforementioned deed of trust.

"In the event you furnish a purchaser of the properties, as aforesaid, you and the undersigned will each mutually release the other from any further liabilities or obligations, save as to my warranty of title to the interest being conveyed. My warranty of title shall except any rights you may hold under your deed of trust described above from M. B. Chastain.

"The terms and provisions hereof shall be binding upon you, the undersigned and our respective heirs, personal representatives, successors and assigns.

"If the above represents your understanding of our agreement, please so indicate by signing a copy hereof in the space indicate.

"Yours very truly,
"/s/ K. G. McDonald

"ACCEPTED:
REPUBLIC NATIONAL BANK
OF DALLAS
/s/ John R. Scott."

The record is clear and undisputed that at the time of the execution of the December 3, 1962 letter appellant was represented by Mr. Henry Baer, an attorney of the firm of Wynne & Wynne, of Dallas, Texas.

Thereafter, according to the record, the Bank purchased the $26,000 note of McDonald from Pioneer Bank & Trust Com-

pany for $27,066.26 and such Louisiana bank forwarded to the Republic Bank the documents transferring all collateral relating to its loan, including an assignment of the $26,000 note and the deed of trust covering the Panola County properties.

By instrument dated December 7, 1962 McDonald conveyed such interest as he owned in the properties in controversy to appellee Chastain, said document including the statement:

"This assignment covers and includes all proceeds from the sale of production not heretofore actually physically received by assignor, and assignee assumes the payment of all unpaid operating expenses."

By letter of December 7, 1962 addressed to Chastain McDonald specifically retained the right to receive the first $30,000 which might be recovered from the Champlin lawsuit or release from the suspension caused by the Whitaker lawsuit mentioned in the December 3 letter above. Chastain accepted and agreed to the terms of this letter on December 18, 1962.

The record reveals that the Bank performed its part of the letter agreement by securing a purchaser for the properties and also by purchasing the Pioneer Bank & Trust Company note and lien. By the letter agreement of December 7 with Chastain McDonald had retained the right to receive the proceeds which might be recovered from certain gas runs and a lawsuit pending. Thereafter disputes arose between McDonald and the Bank as to the actual amount he was periodically entitled to receive · by virtue of his retained rights. Irrespective of these disputes McDonald continued to be paid and receive funds attributable to his retained interest.

While appellant pleads that he was forced and compelled to execute the December 3, 1962 letter agreement under duress he does not point to any evidence in the record, and we are unable to find

any, which would constitute duress under the circumstances surrounding this transaction. Viewing McDonald's testimony in the most favorable light, all he says is that he was forced and compelled to sign the letter agreement late in the evening on the day before the scheduled foreclosure sale. It is undisputed that the Pioneer Bank & Trust Company of Shreveport owned the note in question and that it was secured by valid deed of trust lien and that the trustee under said deed of trust had posted notice of foreclosure sale as he had the right to do. McDonald, in the letter agreement of December 3, 1962, admitted that the bank held a valid lien on these properties and that he had no defenses, legal or equitable, to the payment of the note which was secured by such lien. Such being true, such action by the Pioneer Bank & Trust Company, as a matter of law, could not possibly constitute duress.

In Ulmer v. Ulmer, 139 Tex. 326, 162 S.W.2d 944, a similar contention of duress was advanced and the court. said:

"All the notes here involved were in the hands of parties who had done the plaintiff no wrong. Such notes were secured by valid liens on this property. The holders of such notes and liens had a perfect right to sell, and Perkins had an equal right to purchase. The notes were past due. Perkins therefore had a perfect right to demand payment, and to threaten foreclosure if his demand was not complied with. A threat to sue on a past due note and to foreclose the lien securing same is neither fraud nor duress. [Citing authorities] Simply stated, it is neither fraud nor duress to purchase a note and lien against property owned by one who is unable to pay same. Furthermore, it is neither fraud nor duress for the purchaser of such a note and lien to threaten to foreclose in order to induce a conveyance of the mortgaged property to him. [Citations omitted.] 'It is never duress to threaten to do that which a party has a legal right to do, * * *.' "

882

In Hall v. Fowler, Civ.App., 389 S. W.2d 730 we had occasion to consider a contention that plaintiff had executed a note for attorneys' fees under duress. In holding that plaintiff had not created a fact issue by her testimony regarding duress Justice Bateman reiterated the rule that: " 'There can be no duress unless there is a threat to do some act which the party threatening has no legal right to do.' Dale v. Simon, Tex.Com.App., 267 S.W. 467, 470."

The letter agreement of December 3, 1962 is plain, clear and unambiguous and therefore requires no explanation by parol testimony. The circumstances surrounding the execution of the letter agreement are such as to affirmatively negative the contention of fraud.

At the time the letter agreement was executed appellant was represented by able counsel, Mr. Henry Baer, a reputable attorney of the Dallas Bar. A similar contention of fraud and duress was advanced in the case of Dial Temp Air Conditioning Co. v. Faulhaber, Civ.App., 340 S.W.2d 82. In disposing of the question of fraud and duress Chief Justice Dixon said:

"It is undisputed that appellee Faulhaber, executed the written release on February 28, 1957, and that in doing so he had the services and advice of his own attorney. At this time he had full knowledge of the claims against appellants, which claims he relies on as a basis for his recovery of this judgment. Therefore, until set aside the release must stand as a bar against appellee's claim in regard to the fraudulent sale of corporation stock, which claim is the basis of appellee's suit against appellants.

[Citing authorities.] We think it is significant that no one claims in pleadings or testimony that the release is ambiguous. The case was not tried on that theory."

\*    \*    \*    \*    \*    \*

"We again call attention that no one in this case claims the release was ambiguous in its terms. The construction and interpretation of the instrument was therefore a question of law for the judge, not a fact question for the jury. 10-A Tex.Jur. 405."

Accordingly, we hold that the record is devoid of any evidence of probative force which would create an issue of fact on the question of duress or fraud.

As to the issue of proper payment under the letter agreement of December 3, 1962 the trial court, in granting summary judgment specifically provided that such judgment was without prejudice to the rights of appellant against the Bank for an accounting of the monies, if any, due or which may become due to him by the Bank under the terms and provisions of the letter agreement dated December 3, 1962. Accordingly, appellant is in no position to complain now since he has his remedy reserved and may prosecute same should he desire.

In his sixth and final point appellant contends that he is entitled to an accounting of the funds received by the Bank while Chastain was operating the East Texas leases. The complete answer to this point is the accord and satisfaction agreement entered into between McDonald and the Bank on December 3, 1962 and McDonald's agreement with Chastain of December 7, 1962. We find from the record that such agreements are valid and binding releases between the parties and therefore a bar to McDonald's claim for further accounting. We find no issue of fact presented and therefore overrule appellant's sixth point of error.

Having carefully considered all of appellant's points of error and finding the same to be without merit we overrule the same and affirm the judgment of the trial court.

Affirmed.