S. H. KRESS & COMPANY V. MRS. NUAVITTE RUST.

No. 7196. Decided October 26, 1938.
Rehearing overruled November 30, 1938.
(120 S. W., 2d Series, 425.)

*Slay & Simon,* of Fort Worth, for plaintiff in error.

After plaintiff has signed a release for a valuable consideration such release constituted a full bar to her cause of action for damages for false imprisonment. Houston Ice & Brewing Co. v. Harlan, 228 S. W. 1090; Landa v. Obert 45 Texas 539; Fort Worth Elevator Co. v. Russell, 123 Texas 128, 70 S. W. (2d) 397.

*Rogers & Spurlock,* of Fort Worth, for defendant in error.

When plaintiff had asked for several days time to think over whether she would sign a release for false imprisonment, and was told that she would either sign then or go to jail, such threat amounted to duress, for which she was entitled to recover judgment. Dimmitt v. Robbins, 74 Texas 441, 12 S. W. 94; Wegner Bros. v. Biering & Co., 65 Texas 506; Morrison v. Faulkner, 80 Texas 128, 15 S. W. 797.

MR. JUDGE TAYLOR of the Commission of Appeals delivered the opinion for the Court.

In this case plaintiff in error, S. H. Kress & Company, complains that a release in full by Mrs. Nuavitte Rust, defendant in error, for her cause of action for damages against it was disregarded by the court and a recovery by her of $1,500.00 actual damages and $500.00 exemplary damages was allowed. The case was tried by the court without the aid of a jury. The essential facts are stated in the judgment of the trial court, which is set out in full in the opinion of the Court of Civil Appeals. 97 S. W. (2d) 997. Only such facts will be stated as are necessary to show the nature of the case and present the questions involved relating to duress and the allowance of exemplary damages.

Mrs. Rust, after purchasing five yards of tatting in the Kress store in Fort Worth and after leaving the store was overtaken on the sidewalk outside by two of the salesladies,

Orinda Carlson and May Dell Morris, and accused of having taken a bundle of tatting which she had not purchased. They caused her to return to the store where in one of the dressing rooms she, according to her statement of the matter, was completely disrobed in the process of searching her. Nothing was found concealed on her person or in her clothing. An unwrapped bundle of tatting, in addition to the wrapped package which had been purchased, was reported by one of the salesladies to Mr. Stocks, the assistant manager in charge of the store, to have been found in her purse. Mrs. Rust denied this and asserted upon the trial that if it was discovered in her purse one of the employees placed it there after she was apprehended. The salesladies contended that Mrs. Rust, in the interim between her apprehension and reaching the dressing room, took the unwrapped tatting from her person and put it in her purse. The trial court in its judgment in this connection states:

"Mrs. Nuavitte Rust, was not guilty of the theft * * * and that the defendant and its agents, servants and employees had no probable cause to believe her guilty thereof, but acted with malice in connection with her unlawful and wilful detention and that such detention was against plaintiff's will and without any warrant of arrest or other lawful authority on the part of the defendant and that the defendant S. H. Kress & Company, acting by and through the said C. L. Stocks, its assistant manager, who had express authority to do all the acts done by the said Orinda Carlson and May Dell Morris, who were acting within the apparent scope of their employment, in all things ratified and confirmed the acts of the said Orinda Carlson and May Dell Morris in connection with said detention; and it further appearing to the court that the plaintiff, Mrs. Nuavitte Rust, on the occasion in quesion was by the defendant, its agents, servants and employees, falsely imprisoned with malice and without probable cause * * *."

Mr. Stocks, after the search had ended, acting upon the report made to him of the result of the search, called the police department of the city. Two detectives were sent in response to the call and upon their arrival Mrs. Rust was delivered into their custody and taken to the city hall. While there she phoned the district attorney's office where she had some acquaintances among the assistants. As a result of the phone call she was asked by one of the assistants to come to the office. In the meantime the company officials had placed the matter in the hands of their attorneys, Slay & Simon. Richard Simon, in company with Stocks, the assistant manager, went to the

district attorney's office. The same firm of attorneys had prior to that time represented Mrs. Rust in procuring for her a divorce from her husband and Richard Simon in handling the case had become well acquainted with her. Mrs. Rust had refused to give her name until she reached the city hall and Simon not knowing who was in custody expressed some surprise at finding it was she who had been accused of theft. He at once advised her that he represented the company, stating he did not want her to be under any mistaken belief as to why he was there; that he was interested only in ascertaining whether she intended filing suit against the company. His position as stated to her was that a mistake had been made and that it would be best for all parties to forget what had occurred and that he was hopeful she would see fit to relieve the company of any claim for damages. Mrs. Rust when getting out of the car at the district attorney's office saw Herbert Wade, one of the assistants, and asked him to come to the office. She told him of being in trouble and that she needed help. At the district attorney's office in the presence of Stocks, Simon, Mr. Wade and Swanger, an assistant who had been requested to handle the matter, Mrs. Rust related her version of what had occurred. Following her recital it appears that Mrs. Rust and Simon tentatively agreed that she would sign a release and that the company would apologize to her. While the release was being drafted by Simon, Mrs. Rust, not having fully made up her mind as to whether she would release the company, talked privately to Wade, inquiring of him what he thought about her signing a release. Wade's testimony concerning the substance of their conference follows:

"And as I recall it, she said in substance, 'Well, what I want you to do is tell me what you think about it.' She said, 'I am not asking for legal advice, necessarily. I know you well, and I want you to tell me something, what you think about it.'

"I said, 'Well, the only thing I can tell you is this, that there are several things that you ought to take into consideration, and then you will have to decide the matter for yourself.'

"Then I told her of course that having known her as I had for sometime, and as a matter of fact I have known her fairly well, that naturally I did not believe she was guilty at all, and I couldn't believe it, and I even referred to the fact that certainly a lady in her position with $300 in her pocket at the time would not steal a small amount of tatting, and that, that being the case, I thought she had a lawsuit against Kress & Company. I then told her that on the other hand, if the matter were dropped and ended at this point there probably would be

very few people know or even learn anything about the incident of her having been detained and searched down there; whereas, that if a lawsuit were filed, the lawsuit would have to set up the facts about her having been arrested, and it would probably be tried and a great number of people would no doubt know about the matter. I said further that, 'Of course, while I don't believe it, and your friends never will believe it, that in any character of proceedings of that nature, there are some people in the world that always will believe that where there is that much smoke there is bound to be some fire.' I think I said it in those words, and said it would be a question in my mind of whether I wanted the publicity and whatever embrassment there might be connected with proceeding with the lawsuit, and all of the things that went with it, or whether I wanted the thing dropped and ended now. That was about what I told her, and that in substance was about all I could tell her about it."

Mrs. Rust testified that what was said was just about as Wade stated it.

The release reads:

"There having occurred this afternoon a misunderstanding between Mrs. Nuavitte Rust and Kress & Company concerning 25 cents worth of tatting which has occasioned the said Mrs. Nuavitte Rust's being detained for a period of several hours; and it now appearing that both parties wish to forget the matter; now therefore in consideration of S. H. Kress offering an apology to the said Mrs. Rust and in further consideration of the sum of $1.00 in hand paid, the receipt of which is hereby acknowledged, and in consideration of the compromise and settlement of the parties hereto, the said Mrs. Nuavitte Rust does hereby release S. H. Kress & Co. from any and all liability and from any damages, claims and demands whatsoever which she may have suffered and she acknowledges full satisfaction of all demands."

Mrs. Rust signed the release, Stocks apologized, paid her the dollar, and she, Stocks and Simon left the office together. Four days later she filed this suit for damages, alleging by supplemental petition that the release was given under coercion and duress and that she was caused to believe that unless she executed it immediately she would be taken back to the city hall and thrown into the city jail. She testified that before signing she asked for two or three days in which to think about it; that "Mr. Stocks spoke up and said that they had five or six minutes before the store closed and that I had to make my decision then, and if I did not they were going to make a case

against me and send me back to the city hall." She further testified that it was near night and she wanted to go home to her baby and her 76 year old father and thought from what Mr. Stocks said she would have to sign then or be locked up at the city hall, and that but for the threat made by Mr. Stocks she would not have signed the release. Messrs. Swanger and Wade state she appeared excited and nervous about the matter. She was under arrest at the time, and as the matter stands before this court, had been subjected to extreme humiliation and embarrassment. The trial court's findings and conclusion following a statement of the facts constituting the embarrassment and humiliation to which she was subjected, read:

"* * * and it further appearing to the court that when the matter of the release was first mentioned plaintiff stated that she would like to have two or three days to think the matter over, whereupon the said C. L. Stocks, agent, servant and employee of defendant, who was acting within the scope of his authority at said time, informed plaintiff that she could not and would not be given the time requested in which to think the matter of the release over, but that it had to be done at that time; and it further appearing to the court that plaintiff did at that time and on that occasion execute an instrument purporting to release the defendant S. H. Kress & Company from any and all liability in connection with said false arrest and imprisonment in consideration of the sum of One Dollar and an apology from the defendant S. H. Kress & Company, but that at the time she did so she was given to understand by the said C. L. Stocks, * * * that unless she did execute such instrument at said time and while she was in custody that she would be delivered back to the officers of the City of Fort Worth for confinement in the jail * * * and that she did not exercise her own will in executing said purported release, but was moved to do so solely for the reason that she was led to believe by the said C. L. Stocks that unless she did so she would be confined in jail and would be held further in custody, and that said purported release was, therefore, obtained by the defendant by duress and coercion."

The Court of Civil Appeals statement in its opinion of the testimony bearing on the issue of duress supports the findings of the trial court on that issue.

The company states in its first assignment of error that Mrs. Rust "calmly and deliberately and after a consultation with an attorney who was her personal friend" signed the release and that it was error for the court to thereafter allow

a recovery in her behalf; and states in its second assignment that at the time of signing she was surrounded by people friendly to her, that there was a consideration for its execution, that there was no threat of imprisonment or any ground on which she could be imprisoned, that she was in full command of her senses, and could not thereafter set the release aside on the ground of duress.

We are unable to say as a matter of law that Mrs. Rust signed the release calmly and deliberately, unaccompanied by any threat of imprisonment, or that the statement of the assistant manager directed to her while she was under arrest did not in effect destroy her free agency and overthrow her will, or was not reasonably adequate to do so and cause her to sign the release which otherwise she would not have signed. We agree with the Court of Civil Appeals that the findings of the trial court on the issue of duress have substantial support in the evidence, which forecloses the matter here. See in this connection Dale v. Simon (Com. App.) 267 S. W. 457; Sabinal State Bank v. Ebell et al., 294 S. W. 226; Pfeuffer et al v. Haas et al., 55 S. W. (2d) 111, 10 Texas Jur. p. 73, Sec. 41, par. 2, 9 R. C. L. pp. 716-17. The presence at the time Mrs. Rust signed the release of persons with whom she was on terms of friendliness is but a circumstance weighed by the trial court in reaching the conclusion stated, and cannot be viewed as conclusive that she did not execute the release under duress. The Court of Civil Appeals correctly held the release was voidable and under the findings of the trial court did not err in nullifying it.

We concur with the Court of Civil Appeals in its holdings upon the other questions involved, including its affirmance of the trial court's allowance of exemplary damages. Fort Worth Elevators Co. v. Russell, 123 Texas 128, 70 S. W. (2d) 397. The trial court's conclusion that the arrest of Mrs. Rust was without probable cause as set out above is supported by the evidence. Regardless of whether the company was negligent in employing the salesladies who detained Mrs. Rust and subjected her to the treatment stated above and regardless of whether they had authority to leave the building to apprehend her, the assistant manager who caused her to be turned over to the detectives in effect ratified and approved their acts in connection with the matter from the beginning until the signing of the release. It is not necessary to determine whether in the absence of such ratification the company could be held for exemplary damages. If the assistant manager did not have

actual knowledge of all that the other employees did, he, as the corporation's agent in charge of the store, accepted their version of the transaction and acted upon it.

The judgment of the Court of Civil Appeals affirming the judgment of the trial court, is affirmed.

Opinion adopted by the Supreme Court October 26, 1938.