**Harold SANDERS, Appellant,**

**v.**

**REPUBLIC NATIONAL BANK OF DALLAS, Trustee, Appellee.**

**No. 120.**

Court of Civil Appeals of Texas.

Tyler.

April 1, 1965.

Rehearing Denied April 29, 1965.

Troy Smith, Smith & Smith, Tyler, for appellant.

Charles H. Clark, Calhoun & Clark, Tyler, for appellee.

MOORE, Justice.

This suit was brought by Republic National Bank of Dallas, Trustee, against Harold Sanders, defendant, seeking the recovery on a promissory note executed by Harold Sanders on December 14, 1962, in the principal sum and amount of $390.00 with attorney's fees.

The defendant denied liability alleging that the note was obtained under circumstances amounting to economic duress and that the note was without any consideration.

Defendant also filed a cross-action for the sum of $25.00, alleging that he was likewise coerced into paying this amount which represented one-half of the closing costs in connection with the purchase of certain real property which he purchased from the plaintiff.

Upon trial of the case to the court, without the intervention of a jury, the court entered judgment in favor of the bank on the note and denied any recovery on defendant's cross-action.

The record is before us without Findings of Fact or Conclusions of Law.

The evidence reveals that Harold Sanders was president of Southwest Nurseries, Inc. and was also president of Sanders Nursery Company, Inc. On September 15, 1961, Southwest Nurseries leased from Republic

National Bank, Trustee, a building and certain grounds situated in the city of Tyler. During the year of 1962, before the expiration of the lease, Harold Sanders incorporated the Harold Sanders Nursery Company, Inc. with he and his wife owning a majority of the stock. Sanders Nursery Company, Inc. then commenced using the building and premises hereinabove referred to. Sometime during the month of August, 1962, Sanders began negotiating with the bank to purchase the property. A written contract of purchase and sale was entered into between the bank and Harold Sanders, individually, on November 12, 1962. On December 11, 1962, the bank sent a letter to Sanders advising him that they were ready to close the sale at 10 o'clock on the 14th day of December, and stating that the closing costs would be "approximately $1415 broken down as follows: $1000 down; $390 rent from 9–14–62 to 12–15–62; $10 pro rata share of preparing papers; $15 mortgage's title policy." On December 14, 1962, which was the day before the contract of sale was to expire, Mr. Guy Sparkman, representing the bank, came to Tyler for the purpose of closing the transaction. According to Sparkman's testimony, he advised Mr. Sanders that since the lease on the building had expired on September 14, 1962, and since no rent had been paid on the building during the intervening three months, it was necessary that the rent in the amount of $130.00 per month, totaling $390.00, be paid. He testified that Mr. Sanders objected to the payment of the rent but he could not recall that he objected to payment of the $25.00 representing his one-half of the closing costs. He testified that although he did tell Mr. Sanders that the rent "needed to be taken care of," he never threatened to cancel the contract of sale if the rent was not paid, because he said the discussion never reached that point. After a lengthy discussion according to him, Mr. Sanders finally agreed to pay the rent by executing his promissory note in the amount of $390.00.

Mr. Sanders, on the other hand, testified that although he protested to the payment of the rent, Sparkman demanded the rent as a condition to compliance with the contract and he was, therefore, compelled to pay the same because the contract was about to expire and since he had already put up $500.00 in earnest money and had spent more than $300.00 improving the building, he would suffer economic loss if he refused. He further testified that the nature of the nursery business at that particular season was such that it was absolutely necessary that he purchase the building and commence construction of cold storage facilities; otherwise his business would be destroyed and he would stand to lose a considerable amount of money. He testified that although he agreed to execute the note, he told Sparkman that he did not intend to pay the same when it came due and that his reason for signing the note was to "expedite" the closing of the sale so that he could proceed with building a cold storage plant in the building which was necessary in the operation of the business. Although he admitted that someone owed the rent, he refused to pay the same out of the funds of Sanders Nursery Company, Inc. According to his testimony, Southwest Nurseries was no longer in existence. The record does not reveal whether the corporation had been dissolved.

The lease contract executed by Southwest Nurseries provided that a holding over after the expiration of the lease would operate and be construed as a tenancy from month to month at a rental of $260.00.

The contract of sale between appellant and the bank provided as follows:

"7. Rents, interest, ad valorem taxes for the then current year and escrow accounts for taxes and insurance shall be prorated at the Closing effective as of the Closing date. * * *"

Based upon the above and foregoing facts, appellant contends that the note

was executed under economic duress and was therefore void. It is well established that there can be no duress unless there is a threat to do some act which the party threatening has no legal right to do. Such threat must be of such character as to destroy the free agency of the party to whom it is directed. It must overcome his will and cause him to do that which he would not otherwise do, and which he was not legally bound to do. The restraint caused by such threat must be imminent. It must be such that the person to whom it is directed has no present means of protection. Where the demand is wrongful and it is necessary for the demanding party to resort to the courts to enforce it, there is no duress. But where the party making the demand has, or is supposed to have, the power to injure the business or property interests of the one upon whom the demand is made, without resort to the courts to enforce the demand, and threatens to do an act which would cause such injury, and which he has no right to do, and thereby enforces compliance with his demand, against the will of such party through fear of injury to his business or property, such threats amount to duress, if it appears that the party making such demand ought not in good conscience to retain the benefit received by reason thereof. Dale v. Simon, 267 S.W. 467, 470, (Tex.Com.App.); Lawrence v. J. M. Huber Corporation, 347 S.W.2d 5, (Tex.Civ.App.).

■ It is likewise well established that money voluntarily paid with full knowledge of all facts and without fraud, deception, duress, or coercion, cannot be received back although it was paid upon void or illegal demand or upon claim which had no foundation in fact and was paid without consideration. Gibson v. General American Life Ins. Co., 89 S.W.2d 1070 (Tex.Civ.App.)

■ There is no legal standard of resistance with which the person acted upon must comply at the peril of being remediless for a wrong done to him, and no general

rule as to the sufficiency of facts to produce duress.

■ The modern doctrine is whether or not a threat constitutes duress is a question of fact dependent upon all the circumstances and the mental effect on the party claiming duress. Sabinal State Bank v. Ebell, 294 S.W. 226, (Tex.Civ.App.).

■ The existence of facts from which a state of duress may arise is to be determined by the trier of the fact. Whether or not Mr. Sanders acted freely and voluntarily in the execution of the note, or whether he executed same under economic duress, as a consequence of the conduct of Sparkman, was a fact question for the determination of the trier of the fact. The Oriental v. Barclay, 16 Tex.Civ.App. 193, 41 S.W. 117; Gray v. Freeman, 37 Tex.Civ. App. 556, 84 S.W. 1105; Coleman v. Coleman, 293 S.W. 695, (Tex.Civ.App.). The same would be applicable to appellant's cross-action to recover money paid for the closing costs.

■ In the absence of Findings of Fact or Conclusions of Law, the appellate court must presume that the trial court found all facts in favor of its judgment, and this court is bound by such findings, if there is any evidence of probative force to support the judgment on any theory authorized by law. Rosenberg v. Levin, 181 S.W.2d 832, (Tex.Civ.App.); City of Abilene v. Meek, 311 S.W.2d 654, (Tex.Civ.App.).

■ It was the bank's theory that Mr. Sanders was not threatened or coerced, but voluntarily paid the rent. We think the record contains evidence of probative force showing that the payment was voluntarily made. Moreover, the provisions of the sales contract wherein he contracted to pay the rent would be sufficient to give the bank a right to assert their claim.

■ Threatening to do that which a party has a legal right to do cannot form

the basis of a claim of duress by business compulsion. It would make little sense to inhibit one from claiming or enforcing his just due. The vice arises only when he employs extortive measures, or when, lacking good faith, he makes improper demands. Fischer v. Richard Gill Co., 253 S.W.2d 915, (Tex.Civ.App.); Oleet v. Pennsylvania Exchange Bank, 285 App.Div. 411, 137 N.Y.S. 2d 779.

Appellant further contends that the judgment should be reversed because the undisputed evidence shows that there was no consideration for the note. Appellant takes the position that if any rent was owing, it was owed by either Southwest Nurseries or Sanders Nursery Company, Inc., and that when he signed the note he was under no legal obligation to do so; therefore, the note was executed without consideration.

Appellant's argument seems to ignore the fact that the contract of sale was between the bank and Sanders, individually, and was not with Sanders Nursery Company, Inc. Under the provisions of the contract, the bank agreed to sell to Sanders and he agreed to buy and he further agreed to pay the rent "at the closing, effective as of the closing date."

A benefit accruing to one of the parties in one instrument may be consideration of the promise of such party in another instrument. A valuable consideration may be either a benefit to the promissor or a detriment to the promisee—or stated in another way it may consist of some right, interest, profit or benefit accruing to one party, of some forbearance, loss, or responsibility given, suffered or undertaken by the other. 13 Tex.Jur.2d, Sec. 46, page 178; Jones v. Alvin State Bank, 332 S.W. 2d 124, (Tex.Civ.App.); Lassiter v. Boxwell Brothers, Inc., 362 S.W.2d 884, (Tex. Civ.App.).

The benefit thus accruing to the bank in the contract of sale providing for the payment of rent, supplied the consideration for the execution of the promissory note in payment thereof.

The judgment of the trial court is affirmed.