**R. L. MITCHELL, Appellant,**

v.

**C. C. SANITATION COMPANY, Inc., et al., Appellees.**

**No. 100.**

Court of Civil Appeals of Texas.

Houston (14th Dist.).

June 26, 1968.

Rehearing Denied Sept. 4, 1968.

Benton Musslewhite, Musslewhite & Musslewhite, Lufkin, for appellant.

W. L. Kemper, The Kempers, Houston, for appellees.

SAM ·D. JOHNSON, Justice.

This is a summary judgment case in which the appellant, R. L. Mitchell, brought action for personal injury damages against William W. Crane and C. C. Sanitation Co., Inc. Mitchell's damages were allegedly caused by the negligence of William W. Crane, while he, Crane, was driving a truck in the course and scope of his employment for C. C. Sanitation Company. At the time of the accident in question, Mitchell was driving a truck in the course and scope of his employment for Herrin Transportation Company.

Subsequent to the collision in question, Mitchell signed two releases. The first was in favor of William W. Crane and C. C. Sanitation Company. It was signed by both Mitchell and Herrin Transportation Company and was for $388.65. The second release was also in favor of William W. Crane and C. C. Sanitation Company but it was signed only by Mitchell, and was for $62.12. Therefore the instant case was not only an action for damages but also an action to set aside the releases which the appellant had executed in favor of the appellees.

Appellees, defendants below, filed a motion for summary judgment asserting that the releases signed by Mitchell and the acceptance of the checks paid pursuant to the releases barred any recovery by him. The trial court, taking into consideration the depositions on file, the affidavits, the

pleadings and other stipulations made by the parties, granted the motion for summary judgment denying all relief to the plaintiff. The essential question before this court is whether or not the record reveals a genuine issue of fact to have been raised which would enable the appellant to avoid the enforceability of such releases.

 Being a case determined by summary judgment, we must resolve all doubts as to the existence of a genuine issue as to a material fact against the movant, appellees here. Tigner v. First Nat. Bank of Angleton, 153 Tex. 69, 264 S.W.2d 85; Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929. We must accept as true the evidence which tends to support the position of the appellant, disregarding all conflicts. Cowden v. Bell, 157 Tex. 44, 300 S.W.2d 286; Smith v. Bolin, 153 Tex. 486, 271 S.W.2d 93; Gulbenkian v. Penn, supra. We must view all the evidence in the light most favorable to the appellant. Valley Stockyards Co. v. Kinsel, 369 S.W.2d 19 (Tex.Sup.); Smith v. Bolin, supra. Accepting as true that evidence which tends to support appellant's position and viewing the evidence in the light most favorable to him, the following situation is presented.

Appellant alleged that at the time of the occurrence in question, he was driving a truck in the course and scope of his employment for Herrin Transportation Company. As he was in the process of passing another truck driven by the defendant, Crane, who was in the course and scope of his employment for the defendant C. C. Sanitation Company, the defendant's truck suddenly and without warning was negligently steered to the left by defendant, Crane, thus proximately causing the accident which resulted in serious and permanent injuries to him, the appellant. Numerous specific acts of negligence were alleged against the driver, Crane. The appellant alleged his damages to be in the sum of $40,000.00, which included damages for pain and suffering, lost wages, loss of earning capacity, and past and future medical expenses.

As to the releases, Mitchell alleged that they were signed by him because of duress and fraud imposed upon him by his employer, Herrin Transportation Company. Herrin handled its own claim service through one Ross C. Hall, under the name of Southwestern Claims Adjustment Company. After the accident, Hall advised C. C. Sanitation of the damages to Herrin's truck and to Mitchell, and placed C. C. Sanitation on notice of "Herrin's subrogation interest for all property damage inflicted upon its equipment and all workmen's compensation payments to or on behalf of its driver, Mr. Mitchell." By letter, Hall advised C. C. Sanitation and its insurance company, Maryland Casualty Company, of Herrin's truck damage of $281.65, that Herrin had paid Mitchell's physician, Dr. Cobb, $107.00, and that Herrin was therefore due $388.65. Thereafter Hall advised one Patrick Gorski, an adjuster for Maryland Casualty Company, that Mitchell was expecting to be paid $62.12 which he, Mitchell, had paid for his doctor out of his own pocket.

Maryland Casualty, acting by and through Gorski, prepared the proposed releases. The first was in the sum of $388.65 to be executed by Herrin and Mitchell, and the second was in the sum of $62.12 to be executed only by Mitchell. These were then transmitted from Gorski to Hall so that they might be signed by Herrin and by Mitchell. Hall apparently undertook the responsibility of obtaining Mitchell's signature on both releases. After the two releases were signed they were returned to Maryland Casualty Company who then issued the two checks. The first was mailed directly to Herrin and the second directly to Mitchell. At no time during the negotiations outlined did Maryland Casualty Company or its adjuster Gorski have any personal conversation with, or see Mitchell.

The allegations of duress and fraud find their primary support in the deposition and affidavit of the appellant, Mitchell. According to Mitchell, he was called to Hall's office and when he went there Hall had

the two previously prepared releases in hand. Hall threatened that if Mitchell did not settle for the amounts stated in the releases and sign them that he, Mitchell, would be "through," that is that he would lose his job. Further, that "Ross Hall just told me that it was a release so they could get their money for the truck and I could keep my job." When asked if anyone for Herrin Transportation Company talked to him about the execution of the releases, Mitchell responded, "Well, before I signed them Ross Hall blew his stack because I refused to sign them. He had Eldon Brown call me and put pressure on me." He then testified that Eldon Brown was "second in command" for Herrin Transportation Company. He further testified, "Well, I was informed that I would either sign these releases or I wouldn't have a job." He was asked, "Now, were you told anything else that may have caused you to sign the releases?" He responded, "Nothing except if *they* didn't get *their* money I didn't have no job." (Emphasis added).

Mitchell stated that during this conversation and prior to signing the releases, Hall telephoned someone representing C. C. Sanitation and Crane and "What Mr. Hall said over the telephone was that he had finally convinced me that it would be better to sign it. In other words, it was either sign the release or not have a job." He continued, "Whoever he talked to on the phone, he said I prefer to sign the releases than lose my job." By affidavit, Mitchell identified Patrick Gorski, the adjuster for Maryland Casualty Company, as the person with whom Hall was speaking on the telephone. Mitchell also testified to Hall's statements that he, Hall, was handling the matter for C. C. Sanitation and William Crane, was working on behalf of them, was "taking care" of it for them, and was getting the releases signed for them.

Mitchell testified that he would not have signed the releases had Hall not told him that he was going to lose his job if he didn't sign, that he did not feel that he was being adequately compensated for the injuries he sustained in the accident and that the only reason he would sign releases like those that he did sign would be to keep his job. By affidavit Mitchell stated, "I told Mr. Hall nothing was being paid me for the pain and suffering I had experienced or for my future doctor's bills," but, "he was insistent that I sign the releases so that Herrin Transportation could get the money for their truck." Mitchell stated, "Had he not threatened me with my job I would not have signed the releases. His threat caused me to do something (sign the releases) which was against my own free will and accord."

Mitchell further alleged that at the time Hall made the threats against his job, he did so with the knowledge, consent and acquiescense of the insurance company for the appellees, Maryland Casualty Company, who was acting by and through Gorski, their insurance adjuster. Mitchell alleged that not only did Gorski know of the threats but after such threats were made, Maryland Casualty Company accepted the benefits arising therefrom by accepting the releases and attempting to enforce them. Mitchell alleged that Hall, at the time he procured the execution of releases, was acting as the agent of Maryland Casualty Company. Appellant alleged further, as the basis of the fraud and/or inadequate consideration, that the amount of the releases went solely to compensate Herrin Transportation Company for its expenses, and the appellant and Herrin Transportation Company, for the amount of the doctor bills to date; that no cash was paid to the appellant in addition to the above mentioned amounts. Lastly, appellant alleged that the appellees and his employer, Herrin Transportation Company, acted in a conspiracy coercing him into signing the releases.

■ It is a general rule that contracts obtained through duress or coercion are voidable and this rule is applicable to releases. San Antonio & A. P. Ry. Co. v. Barnett (Tex.Civ.App.), 27 S.W. 676, no

writ hist.; Southern Traction Co. v. Rogan (Tex.Civ.App.), 199 S.W. 1135, writ dismd.; Southwestern Gas & Electric Co. v. Cobb (Tex.Civ.App.), 200 S.W. 1116, no writ hist.; S. H. Kress & Co. v. Rust (Tex.Civ.App.), 97 S.W.2d 997, affirmed 132 Tex. 89, 120 S.W.2d 425 (opinion adopted). "Any coercion of another, either mental, physical, or otherwise, causing him to act contrary to his own free will or to submit to a situation or conditions against his own volition or interests, constitutes 'duress.'" Hailey v. Fenner & Beane, (Tex.Civ.App.) 246 S.W. 412, no writ hist. However, there is authority stating, "There can be no duress unless there is a threat to do some act which the party threatening has no legal right to do." Dale v. Simon (Tex.Com.App.), 267 S.W. 467; Ulmer v. Ulmer, 139 Tex. 326, 162 S.W.2d 944; Cameron County W. Imp. Dist. No. 1 v. Cameron County (Tex.Civ.App.), 134 S.W.2d 491, no writ hist.; Bute v. Stickney (Tex.Civ.App.), 160 S.W.2d 302, writ ref., w. m.; Sanders v. Republic Nat'l Bank of Dallas, (Tex.Civ.App.) 389 S.W.2d 551, no writ hist.; Hall v. Fowler, (Tex. Civ.App.) 389 S.W.2d 730, no writ hist. Appellee contends that duress cannot exist because Herrin Transportation Company was at liberty to discharge the appellant at any time and for any reason they so desired for he was not shown to be more than an employee at will. Stated another way, that the employer Herrin had the right to discharge the appellant at any time and the threat to do what they had the legal right to do cannot constitute duress or fraud.

█ As the disposition of the instant case was made on appellee's motion for summary judgment, applying the well known principles previously set forth, the following conclusions find support in the record and may be validly and helpfully made: (1) the employer Herrin had the right to discharge appellant at any time it desired; (2) there was a very real compulsion, economic and otherwise, here brought to bear on the appellant by his employer;

(3) it was the force of this constraint alone, that caused appellant to do what he otherwise would not have considered doing; (4) this compulsion was brought to bear by the employer Herrin, working in concert with the defendant, C. C. Sanitation; (5) the employer Herrin did what it here did for its own economic benefit and advantage, and (6) the effect of such action was to effectively terminate and destroy a valid claim and otherwise good cause of action possessed by the appellant.

"Although an employer, acting singly, has the undoubted right to discharge an employee or one of his family, the coercion arising from a threat to do so, when employed as a means to force the employee to sign a release of an action which he has instituted against him or another employer is unlawful, and, under circumstances showing that such means in fact overcame the employee's resistance and will, may constitute duress." 20 A.L.R.2d 743, 751. We believe this reasoning is applicable to the instant case, and though no Texas cases directly in point are found, believe that substantial authority is otherwise available.

In Wise v. Midtown Motors, Inc., 231 Minn. 46, 42 N.W.2d 404, 20 A.L.R.2d 735, the subject of the cited A.L.R. annotation, an employee brought an action against a prior employer who had discharged him. The prior employer arranged a meeting in the office of employee's present employer where the present employer told the employee that he would be "through" if his case was not then settled. Under these circumstances the employee signed a release which had been previously prepared by the prior employer. It was there held that, the employee being warranted in believing that his employer would discharge him if he did not sign the release, a question for the jury as to duress arose.

In Holmes v. Industrial Cotton Mills Co., D.C., 64 F.Supp. 20, there had been an investigation by a representative of the wage and hour division of the defendant com-

pany. The employee was told by the company superintendent it looked as if he would lose his job, since the company would abolish the job if it had to pay overtime for over forty hours. The company president then called the employee into his office, read to him a previously prepared release, and told the employee that if he would sign the release it would clear the company and that he could then hold his job. It was there held as a matter of law that the employer had used duress in inducing the employee to sign the release of overtime pay.

In Huddleston v. Ingersoll Co., 109 Colo. 134, 123 P.2d 1016, an employee lost his right hand as a result of alleged negligence of the employer in permitting unguarded farm machinery to be used. There the plaintiff testified that before he executed the release in question, the foreman urged him to sign it because the defendant company would not be liable in damages, had no compensation insurance, and that if he did not sign, he and others would lose their jobs. It was there held that there was sufficient evidence to warrant submission to the jury on the issue of whether or not the release of the employer signed for a consideration of $30.00, was signed as a result of fraud, mistake, or duress.

In Perkins Oil Co. of Delaware v. Fitzgerald, 197 Ark. 14, 121 S.W.2d 877, an employee who was an oiler at a cotton seed oil mill lost both arms in a machine accident at the mill. To induce the employee to release the company, the mill superintendent told him that if he consulted an attorney, or tried to sue the company, his step-father, the sole support of plaintiff's invalid mother, would be discharged, and the company would prevent his reemployment in any other like business. Such evidence was held sufficient to warrant submission to the jury on the question of whether the employee signed the release under duress or coercion.

In the case at bar there was obvious opportunity for employer oppression to be brought against the employee. The parties stood on no equal footing, there was great economic disparity between them, and there was no equality of bargaining positions. The appellant undoubtedly was the weaker party, the threat to discharge him was very real and he was fully justified in expecting that he would be immediately discharged.

In addition, the employer, Herrin Transportation Company, had a direct economic interest in their employee signing the releases, and this was the reason for doing what the company did. Absent the releases being signed by Mitchell, Herrin would not be paid the damages to its truck ($281.65) or the doctor's bills it had previously paid ($107.00). The major portion of the money received for signing the releases went to Herrin Transportation Company, with only $62.12 being paid to appellant. Even this sum was for doctor's bills the appellant had previously paid out of his own pocket as a result of the accident in' question. There was no consideration of, nor compensation for, the most important elements of damages allegedly suffered by appellant, these being mental and physical pain and suffering and reduced capacity to work.

In addition there is evidence in the record from which it might properly be concluded that the defendant C. C. Sanitation not only knew of the constraint and compulsion that was applied to Mitchell by his employer, but participated in it, and later accepted its economic benefits.

■ It is the opinion of the majority of this court that even where the right of an employer to discharge an employee is unquestioned, duress and coercion may be exercised by the employer by threats to discharge the employee, where circumstances such as are here presented appear. We cannot conclude that an employer with the opportunity for oppression on an employee that here appears, may use such power for his own economic interest, and yet conclude that no question of duress or coercion arises. Where there is such an inequality in the terms, sacrifice of benefits, and rights on the part of the employee, inade-

quacy of consideration, and advantage taken of the weaker party, we cannot conclude that no fact situation of duress or coercion exists.

It is the opinion of the majority of this court that under the circumstances here presented the existence of duress and coercion sufficient for the avoidance of the releases was a genuine issue of fact, which was raised by the record. There being such issue of fact, under the law applicable to summary judgment, this cause must be reversed and remanded.

Reversed and remanded.

TUNKS, C. J., dissenting.

Dissenting Opinion

TUNKS, Chief Justice.

I respectfully dissent.

The facts of this case are accurately stated in the majority opinion. Those facts show that the Maryland Casualty Company, insurer for the appellees, was confronted with two claims asserted by two different claimants growing out of one accident. The carrier declined to pay one claimant until the other claim was settled. Its conduct in that respect was not at all unreasonable. It is obvious that an important factor in the settlement of claims is the avoidance of possible expense to be incurred in defending suits. The carrier could not fully avail itself of the benefits in that respect by settling one claim and defending the other. Not only did the conduct of the carrier constitute a reasonable exercise of business judgment but it was conduct clearly within its legal rights.

The majority seems to place emphasis on the fact that it was to the financial interest of Herrin Transportation Company to get the plaintiff to release his claim. I would emphasize that fact as sustaining the validity and propriety of Herrin's conduct, rather than tainting it. It is uncontroverted that Herrin had the lawful right to terminate Mitchell's employment without any cause. It should follow, a fortiori, that they had a right to terminate his employment unless he would take such action as would permit them to recover on their claim. In my opinion their conduct would be more subject to attack if they, having no financial interest in the matter, had threatened to fire Mitchell because of personal spite or ill will or simply because they were permitting Maryland Casualty Company to avail itself of a lawful right to discharge which they, as employers at will, had.

As the two actors in this situation, the carrier and the employer, each acting individually, were acting within their legal rights, so were they, acting in concert, within the bounds of lawfulness. The majority opinion cites authorities for the proposition that an employer's threat to discharge an employee at will is not duress. Neither is any other threat to do any other lawful act duress. It may be assumed that the record supports a finding of fact to the effect that Maryland Casualty Company refused to pay Herrin until Mitchell had settled his claim for the purpose of inducing Herrin to exercise its influence in getting Mitchell to settle for the amount offered. At least Maryland Casualty Company got the benefit of Herrin's exercise of its influence. Maryland Casualty Company, however, did not induce Herrin to do or threaten to do something unlawful to influence Mitchell to settle.

Nor is the appellant's contention that his settlement was involuntary because it was made under economic compulsion sound. In McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391, it was held that a workmen's acceptance or retaining employment in the face of known and appreciated dangers was voluntary though done under the economic necessity of earning a livlihood. Thus, Mitchell's settlement of his claim to avoid losing his job was, nevertheless, voluntary.

I would affirm the judgment of the trial court.