Jack EGGLESTON, Successor to Vapor Honing Company, Inc., Appellant,

v.

HUMBLE PIPE LINE COMPANY, Appellee.

No. 501.

Court of Civil Appeals of Texas, Houston (14th Dist.).

June 14, 1972.

Rehearing Denied July 12, 1972.

William W. Kilgarlin, Warren E. Hancock, Jr., Houston, for appellant.

Frank L. Heard, Jr., Dillard Baker, Houston, for appellee.

SAM D. JOHNSON, Justice.

Jack Eggleston, as successor to Vapor Honing Company, Inc., brought this suit

seeking damages on the theories of breach of contract or quantum meruit, and exemplary damages and attorney's fees. Defendants in the trial court were Humble Pipe Line Company and its inspector, F. S. Parsons. A take nothing judgment was rendered as to both defendants and Eggleston, as appellant, now complains only of Humble Pipe Line's exoneration.

In March of 1961 appellant Vapor Honing, as lowest bidder, was awarded a contract by Humble Pipe Line to sandblast and apply a protective coating to nineteen storage tanks located at its Satsuma, Sugarland and Webster tank farms. Work on nine of the tanks was to be performed on a contract or turn-key basis. Work on the balance of the tanks was to be performed on a time and material or force account basis. This suit focuses upon the contract or turn-key portion of the agreement between the parties. Under the contract Humble's inspector Parsons was clothed with rather broad authority, a part of which was the right to inspect the appellant's equipment and to approve all blasting and the thickness of the coats applied to the tanks.

It was Vapor Honing's contention in the trial court that Parsons, from the inception of the contract, commenced a course of interference, harassment, arbitrary rejection of work and other capricious action which was calculated to—and did—make it impossible to complete the work. Vapor Honing contended that Parsons virtually took over the entire operation and ultimately forced Vapor Honing to terminate its endeavor.

Appellant commenced operations on the job March 30, 1961, beginning at the Satsuma farm. Work soon fell behind schedule and on May 13, 1961, a meeting was held which was attended by Vapor Honing officials, Parsons, and two Humble Pipe Line officials. At this meeting a new job superintendent designated by Parsons was chosen from among the workmen and installed. This individual and others subsequently hired were usual employees of Vapor Honing's chief competitor. The work continued to progress badly. When Vapor Honing's former superintendent later came to the Webster jobsite, there is evidence that Parsons, on July 15, 1961, ordered Vapor Honing's men and equipment off the job, saying that the contract was cancelled. On the following day appellant began moving off its equipment. The parties' working association culminated when Parsons and his superior, W. D. Price, met with Vapor Honing officials in Vapor Honing's office to discuss the various difficulties which had arisen. At that meeting it was agreed that Vapor Honing would discontinue the contract and accept 15% of the contract price for work then completed at the Webster farm. Price testified that George Moss, general manager and vice-president of Vapor Honing, agreed to give Humble Pipe Line a letter indicating that Vapor Honing was "giving up" the contract.

On Monday or Tuesday of the following week Price called Moss in regard to the letter Moss was to give to Humble. The letter from Moss bearing a date of July 18, 1961, was sent to Humble Pipe Line. In a subsequent call Price informed Moss that Humble Pipe Line would require a similar letter from Vapor Honing's chief executive officer. Still another individual representing Humble Pipe Line called Jack Eggleston, Vapor Honing's president and principal stockholder, regarding the additional letter. Some two to three weeks after Moss's letter Eggleston sent Humble Pipe Line a letter identical to Moss's. Both letters stated as follows:

"Gentlemen:

Our Company has contracted to perform certain work for you which is fully described and set out in the contract which you have styled ETA–8.

We have pursued this contract diligently thus far, although in our performance, we have incurred a very substantial loss.

In conference on Saturday, July 15, 1961, your Mr. W. D. Price and Mr. F. S. Parsons suggested that we surrender the

unfulfilled portion of this contract and accept 15% of the contract price for the work completed as of July 15th on Tank No. 118 at Webster.

This letter is to advise you that we concur with their request and suggestion. Please be advised, therefore, that we are hereby surrendering Contract No. ETA-8 without additional penalty other than that which may be incurred by our accepting 15% completion on Tank No. 118.

We regret our inability to consummate this work on an economically sound basis."

A few days after the events of July 15 appellant Jack Eggleston and George Moss met with the president of Humble Pipe Line, W. S. Spangler, to voice complaints as to Vapor Honing's treatment at the hands of Humble Pipe Line. Spangler ordered an investigation. A second meeting was held approximately a week after the first. In early August, 1961, a third meeting was held at which Humble Pipe Line was represented by W. A. Castille, vice-president of operations. At this meeting Humble Pipe Line expressed its satisfaction with the performance by Humble Pipe Line personnel and declined to pay approximately $10,000 in retainage.

Mounting costs, enforcement of a federal tax lien and foreclosure on promissory notes given for loans to meet payrolls ultimately proved too burdensome and Vapor Honing went bankrupt within a few months of termination of the Humble Pipe Line contract.

This suit was filed in March, 1965. Plaintiff's case focused upon alleged harassment and interference with its enterprise by Humble Pipe Line's employee Parsons, which conduct Humble Pipe Line allegedly ratified, and Humble Pipe Line's takeover of Vapor Honing's labor, materials and equipment on the job. On these bases plaintiff alleged a right to recover damages for breach of contract, in quantum meruit and punitive damages. Defendant Humble Pipe Line responded with the defenses of rescission, abandonment of the contract, payment, accord and satisfaction, and estoppel, most of which were based upon the letter sent by Eggleston to Humble Pipe Line. Plaintiff countered with the contention that Eggleston's letter was the product of duress.

In reply to special issues the jury found, inter alia, that Parsons had interfered with Vapor Honing's work, proximately causing damage to Vapor Honing; that Humble Pipe Line ratified such conduct although Parsons' conduct was beyond the course and scope of his duties; that Humble Pipe Line, after May 17, 1961, took over Vapor Honing's men, materials and equipment, for which reasonable compensation would be $46,016; that in view of Humble Pipe Line's ratification of Parsons' conduct, exemplary damages in the sum of $500,000 were justified; that recovery of $45,000 as attorney's fees on the basis of the quantum meruit plea was proper; that Vapor Honing did rescind the contract; that Vapor Honing did not abandon the contract; that Humble Pipe Line still owed certain sums under the contract but that Vapor Honing had agreed to accept a lesser sum in satisfaction of its rights pertaining to the contract; that Vapor Honing had represented that it was surrendering its rights, and that Humble Pipe Line had relied upon that representation and but for that reliance would not have contracted with a third party for completion of the job at Webster. The jury failed to find that Humble Pipe Line's recontracting was a detriment to it, but did find that Vapor Honing had acted under duress when Eggleston's letter of July 18, 1961, was signed.

The trial court set aside the jury's answers to special issue 42 relative to detriment and special issue 43 relative to duress and rendered a take nothing judgment. In this appeal appellant limits himself to three issues: (1) the propriety of the trial court's disregarding the jury's response to special issue 42; (2) the propriety of the trial court's disregarding the jury's reply to special issue 43; and (3) alleged error in

the trial court's refusal to render judgment for appellant in accordance with appellant's motion for judgment by which appellant proposed to recover $594,266 from defendant Humble Pipe Line, and to take nothing from defendant F. S. Parsons.

Appellant's first point of error complains of the trial court's disregarding of the jury's failure to find that Humble Pipe Line suffered detriment by having to contract with a third party for completion of the Webster work. Appellant contends that the record contains some evidence "to support the jury's findings to such issue." We will treat the trial court's action as a holding that, as a matter of law, Humble Pipe Line did suffer detriment, and we will treat the first point of error as a contention that there is some evidence to show Humble Pipe Line did not suffer detriment and thus a contrary holding as a matter of law was improper.

 The matter of detriment is an element of estoppel, a defensive issue upon which Humble Pipe Line had the burden of proof. The contract between the parties revealed that Vapor Honing was to prepare and recoat nine tanks on a turn-key basis for a total consideration of $46,129. The evidence showed that Humble Pipe Line paid Vapor Honing on the turn-key portion $31,972.08 for work actually done, leaving a balance of $14,156.92. Subsequent to Vapor Honing's withdrawal from the job Humble Pipe Line contracted with Gulf Coast Painters, Inc. for completion of the original turn-key work for a total consideration of $24,610, or $10,453.08 more than the price for which Vapor Honing had contracted to perform the balance of the turn-key work. We are of the opinion that the jury's answers to special issues 39 through 41, finding a representation by Vapor Honing that it was surrendering the contract, reliance upon that representation by Humble Pipe Line and recontracting upon the strength of that reliance, establish all the requisite elements of equitable estoppel in this case. Given that the Gulf Coast contract cost Humble Pipe Line $10,000

more, establishing the representation of contract surrender and reliance upon that representation by recontracting with Gulf Coast necessarily means Humble Pipe Line suffered a detriment of $10,000. Thus the recited evidence establishes a prima facie case of estoppel and the inquiry now is whether or not appellant produced any probative evidence beyond a scintilla to demonstrate that Humble Pipe Line did not in fact suffer detriment.

Appellant questions whether or not Humble Pipe Line actually entertained competitive bidding for the contract to complete the Webster job and thus whether or not Humble Pipe Line necessarily suffered detriment. The only evidence in this respect, however, tends to demonstrate that Humble Pipe Line did invite bids, rather than merely negotiate the completion contract with Gulf Coast. Humble personnel F. S. Parsons, W. D. Price, and W. A. Castille all gave testimony supporting appellee's position that the Gulf Coast contract was a result of competitive bidding. Appellant produced no contrary evidence. Moreover, appellant's assertion that Humble Pipe Line was under no obligation to accept any of the bids and form a new contract is of little avail. The question raised by special issue 42 here challenged is not, as in issue 41, what Humble Pipe Line could or would have done but, once it did recontract, *did* it suffer detriment by so recontracting? In addition, the fact that Gulf Coast's completion contract quoted prices per tank higher than its quotations in the original bid for the whole job is equally unavailing. The comparison is not between Gulf Coast's bids, but between Gulf Coast's bid as opposed to Vapor Honing's bid.

Appellant cites Barfield v. Howard M. Smith Company of Amarillo, 426 S.W.2d 834 (Tex.Sup.1968) for the proposition that exposure to the real facts, careless indifference to the means of information reasonably at hand, or exposure to highly suspicious circumstances preclude a party's reliance upon another's representation. In the present case, regardless of who or what

led to Vapor Honing's terminating its contract with Humble Pipe Line, Vapor Honing did represent to Humble that it was forfeiting all rights under and accepting satisfaction of the contract. The letters dated July 18, 1961, are in evidence and clearly state "we are surrendering Contract No. ETA-8" and "accepting 15% completion on Tank No. 118." Both of these letters predated the contract with Gulf Coast signed August 18, 1961. There is nothing to suggest that Vapor Honing's officials were unaware of the legal effect of the letter. Indeed, George Moss, when asked in trial regarding Humble Pipe Line's stated reason for wanting a letter agreeing "to give up" the contract, responded that the reason for the letters was ". . . to make it legal and binding; in other words, we were willing to give up".

■ Appellant argues under the rule in Barfield, supra, that Humble Pipe Line knew or clearly should have known the real facts as to why Vapor Honing left the job. That is not the character of knowledge to which the Barfield rule pertains. Rather, that case speaks of knowing or being in a position to know that the representation is not true or is deceiving. Appellant does not suggest that Vapor Honing or its management did not really intend to surrender the contract. He argues that Vapor Honing was compelled to surrender it, and that is a separate matter, one properly discussed under the second point of error.

■ The contention, based upon the case of Petroleum Anchor Equipment, Inc. v. Tyra, 419 S.W.2d 829 (Tex.Sup.1967), that no detriment can exist because Vapor Honing discovered Gulf Coast workmen on the job at Sugarland prior to the Vapor Honing letter, is unconvincing. In the cited case Tyra's claim of estoppel was of no merit because the action upon which he claimed estoppel occurred some three months after the claimed detriment he was to have suffered. In the present case appellant effectively concedes that the detriment to Humble Pipe Line, if any, was the contract with Gulf Coast, bearing a date of August 18, 1961. This was a full month subsequent to July 18, the date of the first Vapor Honing letter. Even should Eggleston's letter not have been sent prior to that date (and the evidence suggests that it probably was), Eggleston testified that Moss showed him the original letter before it was mailed, and thus Eggleston impliedly ratified it. The jury found in response to special issue 41 that Humble Pipe Line would not have recontracted except for Vapor Honing's representation which, under issue 39, came *"on or after"* July 18, 1961. No contest is made of this finding. In addition appellant submits no proof whatsoever to show that the Gulf Coast workers discovered at the Sugarland jobsite were there in pursuance of a contract with Humble Pipe Line or that they were performing work that Vapor Honing was contracted to do. This one bit of testimony was not pursued by appellant's attorney, was not corroborated, and was never again alluded to in over 1,830 pages of statement of facts. When viewed in light of all the above this testimony can be considered as no more than a scintilla of evidence negativing the fact of detriment incurred by Humble Pipe Line because of its contract with Gulf Coast.

Appellant's second point of error concerns his theory to nullify appellee's defensive issues, i. e., that Eggleston's letter dated July 18, 1961, was written under duress. Three examples of duress are stressed: (1) alleged threats by Humble Pipe Line to remove Vapor Honing from its bidding list for future jobs; (2) alleged threats to sue Vapor Honing for unpaid bills; and (3) alleged threats to charge and sue Vapor Honing for "down time", i. e., time during which completion of the recoating operations rendered Humble Pipe Line tanks useless.

■■ Regarding the alleged threat of omission from future bidding lists, the evidence breaks into two episodes. The first involved a representation by W. D. Price to George Moss, in response to Moss's inquiry that giving the letter of July 18,

1961, would preclude excision from Humble Pipe Line's future bidding lists. Secondly, Jack Eggleston testified that he personally was "reminded that the letter was originally written so that we would not be blackballed for future bidding . . . ". This evidence is scant proof of a threat, an item the trial court's definition of duress expressly required. Regardless, we are cited to no Texas authority which recognizes duress in a threat to remove a contractor from one's future bidding list. It is still a rule of general application in this state, with only a most limited possible modification, that threat to do that which an individual has a legal right to do will not form duress, unless it is a threat of criminal prosecution. Ulmer v. Ulmer, 139 Tex. 326, 162 S.W.2d 944 (1942); McDonald v. Republic National Bank of Dallas, 404 S.W.2d 874 (Tex.Civ.App.—Dallas 1966, writ ref'd n. r. e.). Humble Pipe Line had a right to remove or add to its bidding list any contractor it might choose.

■■ The second complaint pertains to Humble Pipe Line's alleged threat to sue for any bills Vapor Honing left unpaid. This, again, Humble Pipe Line had a perfect right to do. Threat of a law suit for the enforcement of a claim does not constitute duress. Sanders v. Republic National Bank of Dallas, 389 S.W.2d 551 (Tex.Civ. App.—Tyler 1965, no writ); Riggs v. Bartlett, 310 S.W.2d 690 (Tex.Civ.App.—Dallas 1957, writ ref'd n. r. e.). Vapor Honing has in the courts "an adequate means of protection, and there is no imminent threat." See Dale v. Simon, 267 S.W. 467 (Tex.Comm'n App.1924, judgment adopted).

■ The third complaint concerns alleged threats to charge for and sue for "down time". The contract between the parties is silent as to down time. That, of course, does not mean that Humble Pipe Line necessarily has no "legal right" to seek compensation for down time. If it is charged that Humble threatened to sue

for down time, under the above authorities such a threat would not be duress because it is not imminent. And, appellant has not established that such a threat embodies a matter it lacks a legal right to assert. If Humble Pipe Line's threat is said to be just to charge for down time, short of suing to enforce that claim, appellant has failed to demonstrate that such a charge would be wrongful and that merely by so charging Humble Pipe Line would unlawfully injure the property and business of Vapor Honing.

■ There is language in appellant's brief to suggest that it was duress merely for Humble Pipe Line to possess the power to withhold payment prior to proof of payment of labor and materialmen bills, or at least that the prospect of retainage was a factor in persuading Eggleston to submit his letter of July 18, 1961, to Humble Pipe Line. There is nothing in Eggleston's testimony to hint that the power of retainage was a factor. Even so, this power was expressly provided for in the contract. Nothing in the record tends to prove that retainage was threatened, much less than an exercise of the power would have been wrongful. The record suggests that Humble Pipe Line paid out some $31,000 of a total $46,-000 contract price when it legally could have declined to issue such payment.

■ Appellant also suggests as factors in the decision to give the July 18, 1961, letter Vapor Honing's desire not to endanger negotiations with Humble Pipe Line for payment of additional sums and Vapor Honing's fear of soiling its reputation in the business community. These matters relate to anticipated possible disadvantageous side effects of the demise of Vapor Honing's contract with Humble Pipe Line. They are not coercive devices applied by Humble Pipe Line but are foreseeable ramifications of a breakdown by Vapor Honing in the performance of its contractual obligation, whatever the reason for that breakdown. This is not the duress contemplated by the Texas authorities.

Cases cited by appellant in his brief are distinguishable as involving either a threat of criminal prosecution or a threat of some wrongful character. The lone exception is Mitchell v. C. C. Sanitation Company, 430 S.W.2d 933 (Tex.Civ.App.—Houston (14th Dist.) 1968, writ ref'd n. r. e.). We believe that case to be factually dissimilar to the instant case and therefore not controlling. In Mitchell an employer threatened to discharge an employee who had been involved in a collision unless the employee signed a release freeing the other driver in the accident from further liability for damages. The employer sought the release so as to receive compensation for its vehicle involved in the collision. This Court held that, although the employer had a right to discharge appellant any time it chose to, it was duress for the employer to threaten discharge where the employer acted in concert with the other driver's employer, for its own economic advantage, so as to destroy its employee's cause of action. Attention is drawn to the "inequality in the terms, sacrifice of benefits and rights on the part of the employee . . . and advantage taken of the weaker party . . . ". In the present case Humble Pipe Line acted in concert with no one. Nor did Humble Pipe Line threaten to terminate any existing relationship with Vapor Honing. Moreover, Humble Pipe Line acted to protect itself under a contract for performance of a service, not to cover its equipment loss occasioned by an employee's accident. And, crucially, no employer-employee relationship existed between the parties to the alleged duress. There is here no genuine taking advantage of a weaker party comparable to that in the Mitchell case.

Because we find no error in the trial court disregarding the jury's answers to special issues 42 and 43, a take nothing judgment was not improper. It is, therefore, unnecessary to discuss appellant's third point of error seeking judgment in accord with his motion for judgment. The trial court's disposition of the case is affirmed.

Affirmed.

TUNKS, C. J., concurring.

TUNKS, Chief Justice (concurring).

I concur in the result reached by the majority opinion. However, I respectfully disagree with the majority opinion in its conclusion that the holding therein is effectively distinguishable from the holding of the majority of this Court in Mitchell v. C. C. Sanitation Company, 430 S.W.2d 933 (Tex.Civ.App.—Houston (14th Dist.) 1968, writ ref'd n. r. e.). My concurrence herein is based upon my disagreement with the holding in the Mitchell case.