**Mauricio LEWKOWICZ and Lucy Lewkowicz, Appellants,**

v.

**EL PASO APPAREL CORPORATION and Silton Brothers, Inc., Appellees.**

**No. 6945.**

Court of Civil Appeals of Texas, El Paso.

March 25, 1981.

Rehearing Denied April 22, 1981.

Spivey & Grigg, Broadus A. Spivey, Austin, Kemp, Smith, White, Duncan & Hammond, W. Royal Furgeson, Jr., El Paso, for appellants.

Grambling, Mounce, Sims, Galatzan & Harris, William J. Mounce, Karl O. Bayer, Jr., S. Anthony Safi, El Paso, for appellees.

## OPINION

STEPHEN F. PRESLAR, Chief Justice.

This appeal is from the overruling of Appellant's motion for a new trial seeking to set aside an agreed judgment, the settlement agreement upon which it was based, and other instruments, including a deed to Appellants' homestead. The trial Court overruled the motion for a new trial, and we affirm that order.

Mauricio Lewkowicz, Appellant, managed Karen International (Karen), a Mexican corporation based in Juarez, Mexico, which imports from the United States leather that is processed into jackets and vests which must be shipped back to the United States to be sold. Lucy Lewkowicz, wife of Mauricio, also worked at the plant. Karen and its twin plant, El Paso Apparel Corporation, Appellee, are wholly owned subsidiaries of Appellee Silton Brothers, Inc., a California corporation.

Appellees, as employer of Appellants, confronted Appellant Mauricio Lewkowicz with charges of theft, embezzlement, fraud and conversion, seeking to have him confess to the charges and to make restitution. When he refused, police, previously summoned by a Mexican attorney for Appellees, arrested the Appellants and took them to the Juarez, Mexico, jail. Within an hour of the commencement of the criminal process in Mexico, Appellees filed this civil action in Texas for fraud and conversion, praying for actual damages, punitive damages and rescission of an employment agreement. Following their arrest, Appellants were indicted and imprisoned in the Juarez jail on charges of fraud and "abuse of confidence" (embezzlement). The Appellants remained in the Juarez jail for some four months. During that time, Appellant Mauricio Lewkowicz negotiated the instruments herein involved. Agreement was finally reached after numerous phone calls, a number of conferences in person, followed by redrafts of the instruments, and final approval by attorneys for all parties. Following the execution of these instruments and the entry of the consent judgment, the Appellants were released from the Juarez jail. The instruments were executed in the Mexican Court, where Appellants confessed their guilt but were pardoned in accordance with Mexican law because Appellees stipulated that an agreement had been made for restitution.

■ Appellants' motion for a new trial was based purely on equitable grounds. No errors of law were asserted. They pled that they did not sign the instruments of their free will but contrary thereto because Appellees caused them to be incarcerated in

a jail in Juarez and held there until they signed. Duress is a valid ground for the cancellation of instruments. 10 Tex.Jur.2d 298 *Cancellation of Instruments* sec. 29 (1978); *Mitchell v. C. C. Sanitation Company*, 430 S.W.2d 933 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n. r. e.), and authorities therein cited. Duress has been defined as follows:

> [O]ur courts of Texas have consistently followed the rule, as a matter of law, that (1) there can be no duress unless there is a threat to do some act which the party threatening has no legal right to do; (2) there must be some illegal exaction or some fraud or deception; (3) the restraint must be imminent and such as to destroy free agency without present means of protection.

*Tower Contracting Co., Inc. of Texas v. Burden Brothers, Inc.*, 482 S.W.2d 330 (Tex. Civ.App.—Dallas 1972, writ ref'd n. r. e.). *See also: Mitchell v. C. C. Sanitation Company, supra*, and *Sanders v. Republic National Bank of Dallas*, 389 S.W.2d 551 (Tex. Civ.App.—Tyler 1965, no writ). Appellees in this case were doing what they had a lawful right to do.

> 'There can be no duress unless there is a threat to do some act which the party threatening has no legal right to do.' *Dale v. Simon*, Tex.Com.App., 267 S.W. 467, 470. See also *Ulmer v. Ulmer*, 139 Tex. 326, 162 S.W.2d 944, 947; *Cameron County W. Imp. Dist. No. 1 v. Cameron County, etc.*, Tex.Civ.App., 134 S.W.2d 491, no wr. hist.; *Bute v. Stickney*, Tex. Civ.App., 160 S.W.2d 302, wr. ref. w. m.'

*Hall v. Fowler*, 389 S.W.2d 730 (Tex.Civ. App.—Dallas 1965, no writ).

■ The question of what constitutes "duress" is a matter of law. But, the question of whether it exists in a particular situation is generally a question of fact. *Pierce v. Estate of Haverlah*, 428 S.W.2d 422 (Tex.Civ.App.—Tyler 1968, writ ref'd n. r. e.). There are no findings of fact and conclusions of law in this case and, in the absence thereof, we must presume that the trial Court found all facts in favor of its judgment and this Court is bound by such findings, if there is any evidence of probative force to support the judgment on any theory authorized by law. *Sanders v. Republic National Bank of Dallas, supra*.

There is evidence that the Appellants stole large quantities of unprocessed leather and thousands of finished leather jackets, transferred materials to a competing Mexican company in which they have an interest, carried employees of that company on the Karen payroll, used Karen equipment in the manufacture of articles for that company, issued Karen's check to fictitious parties, and carried their personal maid on the Karen payroll; they skimmed off money by an artificial exchange rate in peso conversions, used Karen funds to pay personal expenses, and they used Karen employees for their own economic benefit. By their agreement, the parties arrived at the figure of $270,000 as being the amount all of these acts cost Appellees. The agreed judgment was for that amount but there was a side agreement that the parties would consider the judgment satisfied by the transfer of property involved, although the value of that property was somewhere between $60,-000 and $100,000.

■ Two Mexican attorneys testified that everything that was done was in full accord with the Mexican law. Appellees had a right, if not an obligation, to bring these criminal acts to the attention of the Mexican authorities. It was in keeping with Mexican law for the Appellees to agree with the Appellants that, if they would confess their guilt in open court, Appellees would stipulate an agreement had been reached on restitution and request that the Appellants be pardoned. In Mexico, the offended party has the right to recommend pardon for the guilty party for certain offenses such as abuse of confidence (embezzlement). The Mexican attorneys testified that the law of Mexico is to encourage restitution; that restitution is very important—"it is the difference between three or four days and fourteen or fifteen years in jail;" and that if an offended person pardons an abuse of confidence, the court will be satisfied and take no further

action. The rights of these parties in that regard are controlled by the Mexican law, and Appellants selected that forum by committing the acts in Mexico.

 Another aspect of the case which keeps the trial Court's actions from being inequitable is that the settlement reached was not unconscionable. There was no overreaching, and the facts would support a finding that the Appellees did not get more than they were entitled to.

Considerable argument is in the briefs as to whether guilt or innocence is a factor in a duress case of this nature. We do not pass on the question here since we have no findings of fact. We must conclude that the trial Court found that the Appellants were guilty, if that is a necessary factor.

All points of error have been considered, and all are overruled. The judgment of the trial Court is affirmed.